**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------------------- X
MICHELLE FREUDENBERG, as Administratrix
of the Estate of ERIC FREUDENBERG,

                              Plaintiff,

      -against-

COUNTY OF ORANGE, H.I.G. CAPITAL, LLC,
WELLPATH, LLC (formerly known as CORRECT CARE
SOLUTIONS MEDICAL SERVICES PC), WELLPATH NY
LLC, ORANGE COUNTY SHERIFF CARL E. DUBOIS in
his official and individual capacities, ORANGE COUNTY
DEPUTY JOHN DOE 1 in their official and individual
capacities, SALWA KHOURI, M.D. in her official and
individual capacities, MANDI ZACCAGNINO, N.P. in her
official and individual capacities, JOHN DOE 2-10, in their
official and individual capacities,

                              Defendants.

-------------------------------------------------------------------------------- X

|  |
|---|
| **FIRST AMENDED COMPLAINT** |
| JURY TRIAL DEMANDED |
| **Case No. 23-cv-00847 (KMK)** |

        Plaintiff MICHELLE FREUDENBERG, as Administratrix of the Estate of ERIC

FREUDENBERG, by and through her attorney, P. JENNY MARASHI, ESQ., alleges as follows:

<u>**PRELIMINARY STATEMENT**</u>

        1.     This is a civil action seeking monetary relief against Defendants: COUNTY OF

ORANGE ("ORANGE"); H.I.G. CAPITAL, LLC; WELLPATH, LLC (formerly known as

CORRECT CARE SOLUTIONS, LLC and/or NEW YORK CORRECT CARE SOLUTIONS

MEDICAL SERVICES PC) ("WELLPATH"); WELLPATH NY LLC ("WELLPATH NY");

ORANGE COUNTY SHERIFF CARL E. DUBOIS ("DUBOIS") in his official and individual

capacities; ORANGE COUNTY DEPUTY JOHN DOE 1 ("DOE 1") in his official and

individual capacities; SALWA KHOURI, M.D. ("KHOURI") Medical Director at Orange

County Correctional Facility and an employee of WELLPATH and/or WELLPATH NY in her

official and individual capacities; MANDI ZACCAGNINO, N.P. ("ZACCAGNINO") an employee of WELLPATH and/or WELLPATH NY in her official and individual capacities; JOHN DOE 2-10 (DOE 2-10) the medical director subsequent to KHOURI at Orange County Correctional Facility and employees of WELLPATH and/or WELLPATH NY in their official and individual capacities.

2.      For years, ERIC FREUDENBERG ("MR. FREUDENBERG"), a 44 year old pretrial detainee diagnosed with Bipolar 1, a mental health disability, was denied necessary medical care at Orange County Correctional Facility.  Orange County Correctional Facility Medical Directors KHOURI and DOE 2 were responsible for denying MR. FREUDENBERG the care he needed, knew about the lapse in MR. FREUDENBERG'S medical care, and allowed it to continue uncorrected- medicating him with pain prescriptions and anti-anxiety drugs in order to stop his real and true complaints about the symptoms of cancer that he was experiencing.

3.      Beginning in January 2019 until the time of his death MR. FREUDENBERG was denied necessary medical care and attention despite his numerous written and verbal requests for medical care and attention.

4.      MR. FREUDENERG's complaints consisted primarily of pain, often specifically bone pain, itchy skin, a lump on his head, bloody noses, sore throat and clear statements that he was spitting up blood on a number of occasions.

5.      On at least one occasion a specialist identified the risk of cancer presented by MR. FREUDENBERG's symptoms and recommended to the staff at Orange County Correctional Facility (OCCF), including but not limited to Defendants DUBOIS, DOE 1, KHOURI, ZACCAGNINO and DOE 2, that a biopsy be scheduled to determine whether MR.

2

FREUDENBERG did in fact have cancer.  However, upon information and belief, the biopsy

was not ever performed. As a result, MR. FREUDENBERG continued to live in intolerable and

excruciating pain while these symptoms grew worse, his cancer grew and eventually spread

throughout his body.  He was, one month prior to his death,  diagnosed with "bilateral cervical,

supraclavicular mediastinal & hilar lymphadenopathy due to probable poorly differentiated

adenocarcinoma of lung origin (based on tissue results) along with severe pain" which resulted in

his premature death on July 3, 2021.

6.      Beginning in January 2019, MR. FREUDENBERG made written requests for

medical attention about one hundred times over two years detailing his health complaints,

describing what the specialists had prescribed, and identifying the deficiencies in his treatment.

Nonetheless, the staff at OCCF, including but not limited to Defendants DUBOIS, DOE 1,

KHOURI, ZACCAGNINO and DOE 2, delayed, denied, or refused to provide MR.

FREUDENBERG with the necessary treatment.

7.      For years, MR. FREUDENBERG lived with pain throughout his body which

made his daily life torture.

8.      On or about June 5, 2021 MR. FREUDENBERG was admitted to the hospital

where he was diagnosed with intractable pain and a malignant neoplasm metastatic to a lymph

node of his neck.

9.      MR. FREUDENBERG died within a month.  The cause of death was

complications of stage IV lung cancer.  He died on July 3, 2021– a direct consequence of

Defendants' failure to provide medical care and diagnose and treat his late stage cancer that had

very clear and obvious symptoms.  Such was done with deliberate indifference, and/or because

of his mental health diagnosis, his medical needs and statements about his condition were ignored and not accommodated.

10.     Plaintiff seeks recompense for, including but not limited to,  the Defendants' deliberate indifference to MR. FREUDENBERG's basic constitutional right to necessary medical treatment, and federal right to not be discriminated against due to his mental health disability under the Americans with Disabilities and Rehabilitation Act - but to be provided medical treatment.  Plaintiff seeks, among other things, compensatory damages for MR. FREUDENBERG's physical and mental injuries and wrongful death, ADA violations, as well as punitive damages for the Defendants' misconduct,

**JURISDICTION**

11.     This action is brought pursuant to 42 U.S.C. § 1983 for violations of plaintiff's civil rights under the Eighth and Fourteenth Amendments of the United States Constitution, and state law claims, as well as the Americans with Disabilities Act of 1990, amended and codified as 42 U.S.C. § 12132, et seq. ("ADA"); Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 701, et seq. ("Rehabilitation Act"); 28 C.F.R. Part 35.

12.     This court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343, and under 28 U.S.C. § 1367 to hear Plaintiff's state law claims.

**JURY DEMAND**

13.     Plaintiff demands a trial by jury in this action on each and every one of his claims for which a jury trial is legally available.

**THE PARTIES**

14.     MICHELLE FREUDENBERG, at all times relevant to this litigation, is a citizen of the United States and the State of New York.  She filed a petition with the

4

Surrogate's Court of Orange County and has been appointed the administratrix of the Estate of ERIC FREUDENBERG.

15.     MR. FREUDENBERG was a citizen of the United States and of the State of New York.  At all times relevant to this complaint, he resided in the State of New York.

16.     On or about August 31, 2021, Plaintiff served a Notice of Claim in writing sworn to on his behalf upon Defendants ORANGE and DUBOIS, by certified mail to the officer designated to receive such process personally, which Notice of Claim advised the Defendants ORANGE and DUBOIS of the nature, place, time and manner in which the claim arose, and the items of damage and injuries sustained so far as was then determinable.

17.     More than thirty days have elapsed since service of said notice, and Defendant CITY has failed to pay or adjust the claim.

18.     This action has been commenced within one year and ninety days after the cause of actions of Plaintiff accrued.

19.     Plaintiff has duly complied with all conditions precedent to the commencement of this action.  MICHELLE FREUDENBERG appeared for a hearing pursuant to General Municipal Law § 50-h on or about February 16, 2022.

20.     At all times relevant to this Complaint, MR. FREUDENBERG was an inmate at OCCF.

21.     OCCF is operated by the Orange County Sheriff's Office, a department of Defendant ORANGE, and Defendant DUBOIS, at all times relevant herein DUBOIS was the Sheriff of Orange County.

22.     At all times relevant herein, Defendant ORANGE was a municipal corporation duly organized under and by virtue of the laws of the State of New York.

23.     At all times relevant herein, Defendant H.I.G. was a foreign corporation and private business with its principal office located in the State of Tennessee.

24.     At all times relevant herein, Defendant H.I.G. was a foreign limited liability company and private business with its principal office located in the State of Tennessee.

25.     At all times relevant herein, H.I.G., either directly or through a subsidiary, contracted with ORANGE, either directly or through the Orange County Sheriff's Office and/or Defendant DUBOIS, for the purpose of providing medical care and treatment for OCCF inmates and detainees.

26.     At all times relevant herein, H.I.G. was doing business in the State of New York.

27.     At all times relevant herein, H.I.G. is named herein in its corporate capacity and as a state actor.

28.     At all times relevant herein, Defendant WELLPATH was a foreign corporation and private business with its principal office located in the State of Tennessee.

29.     At all times relevant herein, Defendant WELLPATH was a foreign limited liability company and private business with its principal office located in the State of Tennessee.

30.     At all times relevant herein, Defendant WELLPATH was a foreign limited liability company and private business doing business in the State of New York as WELLPATH NY.

31.     At all times relevant herein, WELLPATH, either directly or through a subsidiary, contracted with ORANGE, either directly or through the Orange County

Sheriff's Office and/or Defendant DUBOIS, for the purpose of providing medical care and treatment for OCCF inmates and detainees.

32.     At all times relevant herein, WELLPATH was doing business in the State of New York.

33.     At all times relevant herein, WELLPATH is named herein in its corporate capacity and as a state actor.

34.     At all times relevant herein, Defendant WELLPATH NY was a domestic corporation and private business with its principal office located in the State of New York.

35.     At all times relevant herein, Defendant WELLPATH NY was a limited liability company and private business doing business in the State of New York.

36.     At all times relevant herein, WELLPATH NY, either directly or through its parent corporation or parent limited liability company WELLPATH and/or H.I.G., contracted with ORANGE, either directly or through the Orange County Sheriff's Office and/or Defendant DUBOIS, for the purpose of providing medical care and treatment for OCCF inmates and detainees.

37.     At all times relevant herein, WELLPATH NY was doing business in the State of New York.

38.     At all times relevant herein, WELLPATH NY is named herein in its corporate capacity and as a state actor.

39.     At all times relevant herein, Defendant WELLPATH NY was a corporate affiliate of H.I.G. and WELLPATH created to be responsible for the purpose of providing medical care and treatment to OCCF inmates and detainees.

40.    Medical care providers, employees and agents (such as H.I.G., WELLPATH and WELLPATH NY), employed by a government entity are state actors for 42 U.S.C. § 1983 purposes acting under color of law when treating inmates and/or implementing policies and practices regarding provision of medical care.  West v. Atkins, 487 U.S. 42, 54 (1988).

41.    Private managers, executives, owners, directors, board members, supervisors, (such as H.I.G., WELLPATH and WELLPATH NY) employed to direct the delivery of medical care to inmates are state actors acting under color of law for purposes of § 1983. *Id.*

42.    At all material times, each of H.I.G., WELLPATH and WELLPATH NY supervisors, managers or executives were responsible for the hiring, retaining, training, and supervising of the conduct, customs, policies and practices of its member employees and agents of H.I.G., WELLPATH and WELLPATH NY including KHOURI, ZACCAGNINO and DOE 2.

43.    WELLPATH and/or WELLPATH NY on information and belief with approval of H.I.G., entered into a contract with ORANGE, DUBOIS and/or the Orange County Sheriff's Office to provide for medical and mental health services of those incarcerated and detained at OCCF facilities.

44.    WELLPATH is a foreign corporation which, either directly or through a subsidiary, is licensed to and is doing business in the State of New York, as a contracted provider of medical and mental health services for ORANGE, DUBOIS and/or the Orange County Sheriff's Office, and their jail system.  It has a business address in Nashville, Tennessee as WELLPATH.

45.    At all material times, WELLPATH was and is owned and controlled by H.I.G., acts on behalf of H.I.G. and was and is responsible for the hiring, retaining, training, and

supervising of the conduct, policies and practices of its employees and agents at WELLPATH, including but not limited to KHOURI, ZACCAGNINO and DOE 2-10.

46.     Defendant H.I.G. is a private equity firm doing business in county jails throughout the United States, including New York State.  H.I.G. acquired CORRECT CARE SOLUTIONS, LLC and/or NEW YORK CORRECT CARE SOLUTIONS MEDICAL SERVICES PC (collectively referred to herein as "CCS") in or about October 2018 and renamed the entity or entities WELLPATH.

47.     As the owner, manager and/or partner of WELLPATH, H.I.G. was employed to provide delivery of medical services to inmates and was and is responsible for the management, hiring, retaining, training, and supervising of the conduct, policies and practices, customs, standards, finances, of its employees, managers, supervisors, and contractors, including KHOURI, ZACCAGNINO and DOE 2-10.

48.     WELLPATH executives, directors, supervisors, managers, physicians and nurses, act on behalf of H.I.G.  H.I.G. is the alter ego of WELLPATH, and/or alternatively WELLPATH acts on behalf of H.I.G. who has control over WELLPATH.

49.     H.I.G. accomplishes this inter alia, by placing its in-house professionals and experts as board members of WELLPATH to ensure continuity of control and management over WELLPATH.  There is unity of interest and ownership such that the separate personalities of H.I.G. and WELLPATH no longer exist, as WELLPATH and their employees and agents act with the consent, management, approval, ratification, control and direction of H.I.G.

50.     Before acquiring CCS and renaming it WELLPATH, H.I.G. knew or should have known of the pervasive unconstitutional conduct of these companies.  It made the decision that providing medical care in jails was a financially lucrative business to acquire, control and

manage. H.I.G.'s use of WELLPATH is but a mere shell, an instrumentality or conduit for the business of financially profiting from providing medical care to the inmates and detainees of jails through these shell companies.

51.     H.I.G. acquired CCS and merged it with other entities renaming it WELLPATH in or about October 2018, for the purpose of carrying H.I.G.'s ownership and financial interests in providing mental and medical health care and so that H.I.G. controls the assets and financial gains while WELLPATH assume the liabilities.

52.     Recognition of H.I.G. as a separate corporate entity would promote injustice and defeat the rights and equities of persons such as MR. FREUDENBERG: it would enable and facilitate the continued unconstitutional conduct, practices, customs and policies, actions and inactions of H.I.G. and WELLPATH that harm this particularly vulnerable, silent and hidden behind jail walls population and discourage abatement of these unconstitutional actions and inactions, as described below in ¶¶ 48-82 thus continuing to cause harm to California's sick and mentally ill incarcerated and/or pretrial detainee vulnerable residents. Such would result in enabling egregious harm and death of this vulnerable population, such as MR. FREUDENBERG in OCCF and other jails, to continue unabated.

53.     Alternatively, WELLPATH and their employees are agents of H.I.G. who exercises sufficient control over WELLPATH to establish an agency relationship. H.I.G. acts through its employees, agents, directors, officers and is responsible for the acts of its employees, agents, directors, and officers performed within the scope of such agency. WELLPATH was and is acting on behalf of Defendant H.I.G. and was and is an agent of H.I.G. and therefore H.I.G. is responsible for WELLPATH's conduct as described in this Complaint.

54.     Upon information and belief H.I.G. gave WELLPATH Defendants authority to act on its behalf and thus WELLPATH, was and is H.I.G.'s agents.  Each defendant was, and is, the agent of the other and at all relevant times was acting as the agent and on behalf of the other.

55.     Defendant KHOURI, at all times mentioned herein, was and is an employee and/or agent of H.I.G., WELLPATH and/or WELLPATH NY.  KHOURI was and is the medial director at OCCF.  KHOURI was and is the on-site physician responsible for establishing policies and practices for H.I.G., WELLPATH and WELLPATH NY employees at OCCF and was and is responsible for training, supervision and management of H.I.G., WELLPATH and/or WELLPATH NY employees including doctors, psychiatrists, nurses, and nurse practitioners, and OCCF custodial staff concerning the provision of medical and mental health treatment to inmates and detainees including pre-trial detainees such as MR. FREUDENBERG.

56.     At all times relevant herein, Defendant DUBOIS was an official appointed by ORANGE for implementing the policies, practices, and customs related to the delivery of health care to inmates and detainees at OCCF and was thereby responsible for the same.

57.     At all times relevant herein, Defendant DUBOIS was an employee of Defendant ORANGE and the Orange County Sheriff's Office.

58.     At all times relevant herein, Defendant DUBOIS was acting under color of law and within the scope of his employment.

59.     At all times relevant herein, Defendant DUBOIS was the official or employee responsible for the safekeeping of inmates and detainees at OCCF, including but not limited to providing for proper medical care and treatment of said inmates and detainees.

60.     At all times relevant herein, Defendant DUBOIS is named in his official capacity, as a state actor and in his individual capacity.

61.     At all times relevant herein, Defendant DOE 1 was employed by Defendants ORANGE, DUBOIS and/or the Orange County Sheriff's Office at OCCF.

62.     At all times relevant herein, DOE 1 is named in his official capacity as a state actor and in his individual capacity.

63.     At all times relevant herein, Defendant KHOURI was employed by H.I.G. as the Medical Director at OCCF, acting under color of law and within the scope of her employment.

64.     At all times relevant herein, Defendant KHOURI was employed by WELLPATH as the Medical Director at OCCF, acting under color of law and within the scope of her employment.

65.     At all times relevant herein, Defendant KHOURI was employed by WELLPATH NY as the Medical Director at OCCF, acting under color of law and within the scope of her employment.

66.     At all times relevant herein, Defendant KHOURI was employed by ORANGE as the Medical Director at OCCF, acting under color of law and within the scope of her employment.

67.     At all times relevant herein, Defendant KHOURI was responsible for ensuring that OCCF inmates and detainees, including Plaintiff, received necessary medical care.

68.     At all times relevant herein, Defendant KHOURI was responsible for overseeing the medical care administered at OCCF. She was also Defendant ZACCAGNINO's supervisor.

69.     At all times relevant herein, KHOURI is named in her individual capacity, professional capacity and as a state actor.

70.     At all times relevant herein, Defendant ZACCAGNINO was employed by H.I.G. at OCCF as a member of the medical staff, acting under color of law and within the scope of her employment.

71.     At all times relevant herein, Defendant ZACCAGNINO was employed by WELLPATH at OCCF as a member of the medical staff, acting under color of law and within the scope of her employment.

72.     At all times relevant herein, Defendant ZACCAGNINO was employed by WELLPATH NY at OCCF as a member of the medical staff, acting under color of law and within the scope of her employment.

73.     At all times relevant herein, Defendant ZACCAGNINO was employed by ORANGE as a member of the medical staff at OCCF, acting under color of law and within the scope of her employment.

74.     At all times relevant herein, Defendant ZACCAGNINO was responsible for ensuring that OCCF inmates and detainees, including MR. FREUDENBERG, received necessary medical care.

75.     At all times relevant herein, ZACCAGNINO is named in her individual capacity, professional capacity and as a state actor.

76.     At all times relevant herein, Defendant DOE 2-10 were employed by H.I.G. as the Medical Director at OCCF, and other medical personnel, acting under color of law and within the scope of his employment.

77.     At all times relevant herein, Defendant DOE 2-10 were employed by WELLPATH as the Medical Director at OCCF, and other medical personnel, acting under color of law and within the scope of his employment.

78.     At all times relevant herein, Defendant DOE 2-10 were employed by WELLPATH NY as the Medical Director at OCCF, and other medical personnel, acting under color of law and within the scope of their employment.

79.     At all times relevant herein, Defendant DOE 2-10 were employed by ORANGE as the Medical Director at OCCF, and other medical personnel, acting under color of law and within the scope of his employment.

80.     At all times relevant herein, Defendant DOE 2-10 were responsible for ensuring that OCCF inmates and detainees, including MR. FREUDENBERG, received necessary medical care.

81.     At all times relevant herein, Defendant DOE 2-10 were responsible for overseeing the medical care administered at OCCF.  Defendant DOE 2 was also Defendant ZACCAGNINO's supervisor.

82.     At all times relevant herein, DOE 2 is named in her individual capacity, professional capacity and as a state actor.

83.     Upon information and belief, at all relevant times, Defendants were and are residents of the United States and the State of New York.

84.     At all relevant times, Defendants violated ERIC FREUDENBERG's clearly established rights under the Eighth and Fourteenth Amendments to the United States Constitution of which any reasonable correctional medical staff in Defendants' respective circumstances would have known, as well as his rights under the NY State Constitution and federal statutes, including the ADA and Rehabilitation Act.

## **STATEMENT OF FACTS**

85.     Defendants ORANGE, H.I.G., WELLPATH, WELLPATH NY, DUBOIS, KHOURI and DOE 2-10 have a pattern of failing to adequately protect inmates from harm and from serious risk from staff.

86.     Defendants ORANGE, H.I.G., WELLPATH, WELLPATH NY, DUBOIS, KHOURI and DOE 2-10 have a pattern of failing to ensure that adequate intake screening and health assessments are provided.

87.     Defendants ORANGE, H.I.G., WELLPATH, WELLPATH NY, DUBOIS, KHOURI and DOE 2-10 have a pattern of failing develop and implement an appropriate medical screening instruments that identify observable and non-observable medical needs, including chronic diseases, and ensure timely access to a physician when presenting symptoms require such care.

88.     Defendants ORANGE, H.I.G., WELLPATH, WELLPATH NY, DUBOIS, KHOURI and DOE 2-10 have a pattern of failing to provide access to health care, ensure inmates have adequate access to health care, ensure that the medical request process for inmates is adequate and provides inmates with adequate access to medical care.  This process should include logging, tracking,  and timely responses by medical  staff.

89.     Defendants ORANGE, H.I.G., WELLPATH, WELLPATH NY, DUBOIS, KHOURI and DOE 2-10 have a pattern of failing to ensure that treatment and administration of medication to inmates is implemented in accordance  with generally accepted professional  standards of care.

90.     Defendants H.I.G., WELLPATH and WELLPATH NY did not  understand the New York  health services market  well enough to provide quality care to OCCF inmates and detainees.

91.     Defendants H.I.G., WELLPATH and WELLPATH NY have been named in over one thousand federal lawsuits regarding inadequate health care provided to prisoners and that some of those prisoners have died.

92.     A report issued by the Project on Government Oversight indicated WELLPATH's predecessor CCS had been sued at 1,395 times in federal court as of September 12, 2019.

93.     In 2019 investigative reports by CNN[1] and The Atlantic[2] detail the denial of medical care, lack of medical care and other serious inadequacies in the level of medical care provided by CCS and WELLPATH in jails, including county jails such as OCCF throughout the United States, especially for inmates with mental health disabilities.

94.     The CNN report cited "internal documents and emails, medical records, autopsy reports, audits, interviews with more than 50 current and former employees and scathing correspondence from government clients show that amid a focus on 'cost containment' and massive corporate growth, [WELLPATH/CCS] has provided substandard care that has led to deaths and other serious outcomes that could have been avoided."

95.     The CNN report went on to state:

a) "Across the country, the same themes have been found: doctors and nurses have failed to diagnose and monitor life-threatening illnesses and chronic diseases. CCS employees have denied urgent emergency room transfers. They have failed to spot or treat serious psychiatric disorders and have allowed common infections and conditions to become fatal."

---

[1] https://www.cnn.com/interactive/2019/06/us/jail-health-care-ccs-invs/
[2] https://www.theatlantic.com/politics/archive/2019/09/private-equitys-grip-on-jail-health-care/597871/

16

b) "A review of lawsuits filed over the last five years found the company has been sued for more than 70 deaths.  In other lawsuits over that time period, inmates have alleged prolong suffering, ongoing complications, shortened complications and debt."

c) "Among the references to multiple instances of inmates being denied medical care the report made reference to two inmates, Henry Clay Stewart and Jeff Lillis, and stated, "Doctors who examined records from around a dozen deaths and other incidents for CNN said they believed that in the majority of the cases they reviewed, serious outcomes could have been avoided and inmates including Stewart and Lillis could have lived had CCS provided proper care."

d) "In December, the US Department of Justice took the rare step of declaring the medical program at a Virginia jail unconstitutional. It found that inmate requests at the Hampton Roads Regional Jail were ignored or otherwise not taken seriously, resulting in serious harm and death."

96.     Directly referencing and implicating the pattern, practice, policy and/or custom of WELLPATH and CCS, the CNN report stated, "In a deposition in a South Carolina lawsuit, a CCS medical director …, said in 2014 that the company made it clear that employees who 'run up the tab' wouldn't be around very long.  He said there was pressure on him from both the county and CCS to limit emergency room transfers because of the "severe expense" involved -- regardless of who had to foot the bill."

97.     Further evidence of this pattern, practice, policy and/or custom of prioritizing profit by denying medical care was another CCS employees interviewed by

CNN, "[W]ho said she started working for the facility more than a decade ago when the county ran the medical unit, said that after CCS took over she repeatedly made it clear to her supervisors and a county official that she believed inmates were at risk. Medical decisions and staffing were being driven by an 'obsession with profit,' she said.

98.     More specific to OCCF and the actions, inaction, pattern, practice, policy and/or custom of Defendants ORANGE, H.I.G., WELLPATH, WELLPATH NY, DUBOIS, KHOURI and DOE 2-10 at OCCF, Plaintiff incorporates by reference herein a complaint made on February 17, 2022 by Catholic Charities Community Services – Archdiocese of New York, among others, regarding the conditions at OCCF including complaints of "medical neglect, abuse, and retaliatory withholding of care."[3]

99.     The Catholic Charities complaint states:

a) "Medical care at OCCF is described as "poor," "bad," and "slow." Detained people are regularly "ignored." Medical staff often take days, at times weeks, to respond to requests for medical attention. People have to submit "four or five sick calls" to get the attention of staff, and "go without medication for two or three weeks" due to gaps in prescription refills. Not only do sick calls and medication requests generally go unanswered, but OCCF also fails to give detained people copies of their requests, making it harder for them to keep a record of the number of times they have asked for help."

b) "Painkillers regularly substitute for actual care, even when medically inappropriate or inadequate."

---

[3] https://www.law.nyu.edu/sites/default/files/OCCF%20Multi-Organization%20DHS%20CRCL%20Complaint%20and%20Index_2%2017%202022.pdf

c) "One person's medical records revealed that despite measurements of elevated liver enzymes indicative of liver disease, OCCF failed to conduct any additional testing, leaving the individual at risk of chronic liver damage."

d) "Reports indicate that OCCF also deprives detained people of access to critical treatment such as outpatient care. This includes one individual referred to MPN with chronic tonsillar masses and swollen lymph nodes who had yet to receive a diagnosis, biopsy, or treatment prior to MPN intervention. OCCF at last provided an ultrasound, yet even after the scan revealed a mass, medical staff continued to ignore the need for urgent follow-up treatment and evaluation. Records further indicate that OCCF has failed to provide one individual with the recommended blood pressure checks to monitor hypertension; another individual has not received the outpatient operation recommended for his chronic pain; another person showing abnormal lung scans has yet to be seen for further testing and imaging. OCCF's failure to render critical care has put individuals at risk of fatal harm."

100.   Also, in New York, a federal lawsuit was filed by the estate of a prisoner against certain Defendants including Correct Care Solutions (WELLPATH's former corporate entity name) for denying adequate medical and providing such inadequate medical care that the inmate died.  See, Melvin v. County of Westchester, et al, Case No. 7:14-CV-02995.  The case settled for an undisclosed amount.

101.   There are hundred of cases against WELLPATH for ADA violations of mentally ill consumers.

102.    MR. FREUDENBERG was arrested and confined to OCCF in December 2018. He was there as a pre-trial detainee, incarcerated until June 2021 prior to his hospitalization and untimely death on July 3, 2021.

103.    Beginning in January 2019 until the time of his death MR. FREUDENBERG made multiple requests for medical attention. His complaints consisted primarily of pain, bone pain, itchy skin, bloody noses, sore throat and he stated he was spitting up blood on a number of occasions. The aforementioned symptoms are consistent with symptoms of a person suffering from cancer.

104.    MR. FREUDENBERG specifically mentioned that he believed he may have cancer and had a family history of cancer. He specifically stated his many symptoms that should have alarmed Medical Defendants who were treating him. The following paragraphs are notes taken form medical records overseen by Defendants, including ORANGE COUNTY SHERIFF CARL E. DUBOIS ("DUBOIS") in his official and individual capacities; ORANGE COUNTY DEPUTY JOHN DOE 1 ("DOE 1") in his official and individual capacities; SALWA KHOURI, M.D. ("KHOURI") Medical Director at Orange County Correctional Facility and an employee of WELLPATH and/or WELLPATH NY in her official and individual capacities; MANDI ZACCAGNINO, N.P. ("ZACCAGNINO") an employee of WELLPATH and/or WELLPATH NY in her official and individual capacities; JOHN DOE 2-10 (DOE 2-10) the medical director subsequent to KHOURI at Orange County Correctional Facility and employees of WELLPATH and/or WELLPATH NY in their official and individual capacities

105.    From medical records, the following were recorded between 2019- 2020: On 12/22/20 – pt wants to discuss blood test results – why some of the tests ordered were not performed by the lab.

106.   On 9/20/20 Mr. FREUDENBERG complained - chunks of blood came up when would clear his nasal passages.  9/19/20 – "supposed to have bloodwork done for rheumatologist doc - paper came back with me on 9/3/20"

107.   He made over two  dozen complaints about pain and a lumps on his body, from his records including but not limited to: 1/05/19 -  "pain in my bones"  "on/off since 8/18"  "so bad I want to die"; 1/19/19 - "want to get checked for cancer please" "bad bone pain";1/20/19 - "request for colon cancer test"; 1/18/19 - "want to get checked for cancer please" "severe pain in my bones": 1/19/19 - "This is my 5th request! Why am I not being seen? I am in pain!" "want to get checked for cancer".

108.   Multiple complaints about sore throat and spitting up blood beginning on 1/12/19: 1/06/19 - "I would like to get checked for cancer. As I don't feel well. Bone aches, headaches, feel weak and sick constantly. Cancer runs in my family. My dad and uncle, sister all died from cancer."; 7/5/20 – "I'm itching like crazy all over my body."; 6/3/20 "I need something stronger and longer lasting for pain in my arms and legs."; 6/19/20 – pain "… something is seriously wrong with my body." ; 6/9/20 – "… continuously pulled muscles in my upper back/shoulder area. Something is wrong with my body." ; 6/5/20 – "is an ultrasound being done on lump on top of my head." ;6/3/20 – nose bleeds. 5/31/20 – lump on head ; 5/25/20 – lump on head – body pains aches – very itchy ; 5/27/20 – "extreme pain right shoulder area goes into my chest and back too".

109.   MR. FREUDENBERG's complaints, were made aware to all Defendants, however, they went largely unaddressed, except to provide him pain medication by Medical Defendants.

110.    He was also, in an effort for medical defendants to quite his complaints, prescribed anti-anxiety medication- including Duloxetine is used to treat depression and anxiety, and Trazodone, another anti-depressant, and Prozac, yet another anti-depressant.

111.    That is appalling, deliberate indifferent, wanton and willful misconduct that Medical Defendants knew or should have known was a complete departure from not only medical standards but any kind of humane treatment, and a violation of the ADA.

112.    The cause of the unabating chest pain, bleeding from cavities, lumps, despite MR. FREUDENBERG making it clear to Defendants that he believed he had cancer, was never investigated.  Instead- a band-aid was provided that did not actually treat the pain, but only was used as a means to get MR. FREUDENBERG to stop complaining and to put him into a stupor so he would not be able to do much of anything- but sleep.

113.    Horrifically, as a testament to the deliberately indifferent and discriminatory care provided to MR. FREUDENBERG by Defendants, on or about January 8, 2020 MR. FREUDENBERG was admitted to the hospital for a GI bleed.  The cause of the GI bleed was determined to be an ulcer believed to have been caused by the prescription of pain medication provided by medical staff at OCCF for an extended period of time.

114.    The prescribed pain medication provided little to no relief to MR. FREUDENBERG for the aforementioned symptoms; an additional indication that the treatment being provided by staff at OCCF was inadequate in that it failed to properly diagnose the cause and underlying condition MR. FREUDENBERG was suffering from.

115.    Throughout MR. FREUDENEBRG's incarceration he received blood tests beginning in 2020 which began showing an elevated sedimentation rate, sometimes referred to as Westergren level in medical records.  MR. FREUDENBERG received additional blood tests

throughout 2020 until the time of his death.  The blood tests continually revealed the elevated

sedimentation rate, often worsening.  This elevated sedimentation rate was further evidence that

MR. FREUDENBERG may have cancer.

116.   MR. FREUDENBERG expressed concern regarding his bloodwork with

Defendants, including but not limited to jail and medical staff at OCCF.  He referred to the

elevated sedimentation rate repeatedly in his requests for medical attention.

117.   On or about May 27, 2020 MR. FREUDENBERG documented in a request for

medical attention that he was suffering from extreme pain in his right shoulder area that extended

into his chest and back.  These complaints were yet another indication that MR.

FREUDENBERG may have cancer.

118.   On or about August 8, 2020 MR. FREUDENBERG had a consultation with

KHOURI where KHOURI misdiagnosed the symptoms of his cancer and overprescription of

pain pills (including his being tired and weight gain) to hypothyroidism.  The records were

reviewed and submitted by ZACCAGNINO.

119.   The fact that it was not hypothyroidism- but, rather progressing cancer – based on

the approximately dozen of visits to KHOURI, and ZACCAGNINO and DOE 2-10- should have

alarmed Defendants that the chest pain, weight gain, blood, and myriad of symptoms could not

be explained away by hypothyroidism.


120.   Defendants DUBOIS, DOE 1, KHOURI, ZACCAGNINO and DOE 2-10, all

knew that failing to provide the complained of medical treatment would pose a substantial risk to

his heath- or they should have known that failing to provide proper treatment would pose a

substantial risk to MR. FREUDENBERG- however, they, in order to brush off his complaints chose to instead, repeatedly misdiagnose MR. FREUDENBERG.

121.    On or about June 9, 2020 MR. FREUDENBERG documented in a request for medical attention complaints of feeling like he had  "... continuously pulled muscles in my upper back, shoulder area. Something is wrong with my body." Defendants DUBOIS, DOE 1, KHOURI, ZACCAGNINO and DOE 2-10, had access to and reviewed the records, each was individually and together responsible for their objective and subjective deliberate indifference to his medical symptoms clearly indicating progressing cancer.

122.    On or about July 24, 2020 a blood test revealed MR. FREUDENBERG's sedimentation rate continued to rise.

123.    In August of 2020 MR. FREUDENBERG was seen by an endocrinologist who noted MR. FREUDENBERG had an enlarged thyroid and thyroid nodules.  The endocrinologist made specific reference that these additional symptoms may be the result of cancer and recommended a fine needle biopsy to which MR. FREUDENBERG agreed.

124.    Upon information and belief, the fine needle biopsy was never scheduled by Defendants DUBOIS, DOE 1, KHOURI, ZACCAGNINO and DOE 2-10, despite MR. FREUDENBERG's over one hundred follow up requests that the biopsy be scheduled, blood results be obtained, etc.

125.    The denial of these requests were caused by malice, subjective and objective deliberate indifference, the willful decision to provide sub-par care in order to maximize profits, the complete lack of any meeting of medical standards that should have been in place, discrimination against MR. FREUDENBERG for his mental disability, and willful misconduct.

126.    On at least four separate occasions, January 12, 2019, February 21, 2020, February 29, 2020 and September 20, 2020, MR. FREUDENBERG documented symptoms of spitting up blood, coughing blood and having blood in his nasal passage, including at least one occasion in which he informed Defendants that he was spitting up blood on a daily basis.

127.    On or about February 22, 2021 MR. FREUDENBERG's blood work indicated his sedimentation rate was still high and revealed that his platelet level was now elevated, as well, an additional sign that MR. FREUDENBERG may have cancer.

128.    On or about March 5, 2021 MR. FREUDENBERG documented symptoms of sharp pains in the left side of his chest right near his heart.

129.    In late May or early June of 2021 MR. FREUDENEBERG was finally hospitalized after complaints of severe neck pain.

130.    MR. FREUDENEBERG was discharged on or about June 4, 2021 with a diagnosis of "bilateral cervical, supraclavicular mediastinal & hilar lymphadenopathy due to **probable poorly differentiated adenocarcinoma of lung origin** (based on tissue results) along w severe pain".

131.    On or about June 5, 2021 MR. FREUDENBERG was again admitted to the hospital where he was diagnosed with intractable pain and a malignant neoplasm metastatic to a lymph node of his neck.

132.    MR. FREUDENBERG died within a month.  The cause of death was complications of stage IV lung cancer.  He died on July 3, 2021.

133.    Despite being on actual notice that MR. FREUDENBERG was receiving inadequate treatment for the aforesaid symptoms and condition, Defendants did not ensure that plaintiff received the necessary medical care.

134.     Despite their awareness that MR. FREUDENBERG's symptoms and condition were not being treated effectively, and that these symptoms continued to interfere with MR. FREUDENBERG's ability to engage daily activities, use the services of the jail, in fact, there were dozens of days documented where MR. FREUDENBERG could not get out of bed, was deprived of access to any of the services of the facility, including meals, library, bathing, and  medical services, and that these caused him extreme pain and had other lasting consequences, Defendants did not ensure that plaintiff received necessary and appropriate treatment.  They willfully and deliberately were indifferent to it.

135.     Because of Defendants' actions and omissions, MR. FREUDENBERG suffered from severe symptoms for years, including nearly constant pain, difficulty sleeping, coughing and/or spitting up blood, and eventually led to his premature death.

136.     Among other things, MR. FREUDENBERG's medical request forms noted that a biopsy had been recommended but was never scheduled, and the reason it was not scheduled was due to Defendants' deliberate indifference and wanton and reckless disregard of MR. FREUDENBERG's medical needs, as well as their discrimination and denial of medical services to him due to his mental health disability.

137.     MR. FREUDENBERG had addressed the failure to treat his symptoms and failure to conduct a biopsy, specifically mentioning the possibility and belief he had cancer with OCCF staff on a number of occasions to no avail.

138.     MR. FREUDENBERG's medical request forms also specifically addressed the aforementioned blood test results.

139.     MR. FREUDENBERG noted that he had experienced little to no relief from the minimal treatment he did receive which consisted primarily over-prescribing painkillersand anti-

anxiery medicaiton and that he continued to suffer from debilitating pain and the other aforementioned symptoms.

140.    Plaintiff complained repeatedly to Defendants and other OCCF staff about the aforementioned lack of medical care and pleaded for help, to no avail.

141.    Plaintiff suffered serious physical injuries and substantial pain and suffering as a result of defendants' unconstitutional conduct and deliberate indifference which eventually led to his death.

## FIRST CAUSE OF ACTION

### 42 U.S.C. § 1983 – Deliberate Indifference to Plaintiff's Serious Medical Needs

142.    Plaintiff realleges and incorporates by reference each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

143.    That MR. FREUDENBERG was an inmate and/or detainee at OCCF from December 2018 until his diagnosis of stage IV lung cancer and had a constitutional right to adequate medical treatment and care.

144.    That from December 2018 until his diagnosis and subsequent death MR. FREUDENBERG presented a severe and urgent medical need that posed a sufficient risk of serious illness and death that was not treated with adequate medical care and attention by Defendants DUBOIS, DOE 1, KHOURI, ZACCAGNINO and DOE 2-10.

145.    Defendants DUBOIS, DOE 1, KHOURI, ZACCAGNINO and DOE 2-10 knew of and disregarded a substantial risk of serious harm to MR. FREUDENBERG's health and safety despite obvious indications that he was suffering from a serious medical illness.

146.    Specifically, from December 2018 until July 3, 2021, the MR. FREUDENBERG was improperly denied care and/or was provided inadequate care for his medical needs, denied timely access to a physician, and was not provided appropriate or timely medical tests and/or treatment pursuant to generally accepted professional standards of care.

147.    That Defendants DUBOIS, DOE 1, KHOURI, ZACCAGNINO and DOE 2-10's actions and/or omissions constitute violations of MR. FREUDENBERG's Eighth and Fourteenth amendment rights pursuant to 42 U.S.C. §1983 by their conduct in denying him lifesaving medical treatment and failing to provide medical treatment and that said conduct was repugnant to the conscience of mankind and incompatible with the evolving standards of decency that mark the progress of a maturing society.

148.    That from December 2018 until July 3, 2021, Defendants DUBOIS, DOE 1, KHOURI, ZACCAGNINO and DOE 2-10 knew of and disregarded a substantial risk of serious harm to MR. FREUDENBERG's health and safety despite being informed of the serious risk of a cancer diagnosis and/or in failing to provide adequate treatment that could have and would have detected cancer.

149.    That Defendants DUBOIS, DOE 1, KHOURI, ZACCAGNINO and DOE 2-10's actions in inadequately providing and/or failing to provide medical care constitute violations of MR. FREUDENBERG's Eighth and Fourteenth amendment rights pursuant to 42 U.S.C. §1983 and show a deliberate indifference to the MR. FREUDENBERG's serious medical needs.

150.    In committing the acts and omissions complained of herein, Defendants denied plaintiff necessary medical treatment and/or failed to ensure that he received necessary medical treatment.

151.    In committing the acts and omissions complained of herein, defendants acted

under color of state law, individually and in concert, to deprive plaintiff of his constitutionally

protected rights under the Eighth and Fourteenth Amendments to the United States Constitution.

152.    As a direct and proximate result of defendants' deprivation of plaintiff's

constitutional rights, plaintiff suffered the injuries and damages set forth above.

153.    The unlawful conduct of defendants was wilfull, malicious, oppressive, and of

such a nature that punitive damages should be imposed.


## SECOND CAUSE OF ACTION

### 42 U.S.C. § 1983 – Supervisory Liability

154.    Plaintiff realleges and incorporates by reference each and every allegation set forth in the

foregoing paragraphs as if fully set forth herein.

155.    ORANGE, H.I.G., WELLPATH, WELLPATH NY, DUBOIS, DOE 1,  KHOURI

and DOE 2-10 were responsible for supervising and training the medical staff who

provided treatment  to OCCF inmates and detainees and failed to properly supervise and

train the medical staff regarding the negligent medical treatment provided to the MR.

FREUDENBERG from December 2018 until July 3, 2021.

156.    As a result of the inadequate supervision provided by ORANGE, H.I.G.,

WELLPATH, WELLPATH NY, DUBOIS, DOE 1, KHOURI and DOE 2-10, MR.

FREUDENBERG  was deprived  of the rights, privileges and immunities secured  by the

Eighth and Fourteenth amendment  rights pursuant to 42 U.S.C. §1983.


## THIRD CAUSE OF ACTION

29

### 42  U.S.C. § 1983 – Monell Claims

172.  Plaintiff realleges and incorporates by reference each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

173. The actions, omissions, and decisions made by Defendants ORANGE, H.I.G, WELLPATH, WELLPATH NY, DUBOIS, KHOURI and DOE 2-10 regarding the provision of comprehensive health care to OCCF inmates and detainees constitute their policies, practices and customs.

174. That the actions and/or omissions of Defendants ORANGE, H.I.G., WELLPATH, WELLPATH NY, DUBOIS, KHOURI and DOE 2-10 in responding and/or providing to the requests and demands for medical attention of MR. FREUDENBERG were done in accordance with the policy, practice, and custom of Defendants ORANGE, H.I.G, WELLPATH, WELLPATH NY, DUBOIS, KHOURI and DOE 2 and that said practice of failing to respond in an adequate manner and in providing inadequate care was so persistent and widespread that it constituted an official policy or custom.

175. That the policies, practices and customs of Defendants ORANGE, H.I.G, WELLPATH, WELLPATH NY, DUBOIS, KHOURI and DOE 2-10, who were responsible for the provision of comprehensive health care to OCCF inmates and detainees, were inadequate in that there was a deliberate indifference to their serious medical needs and that Defendants ORANGE, H.I.G, WELLPATH, WELLPATH NY, DUBOIS, KHOURI and DOE 2-10 were totally unconcerned with their welfare.

176.     The policies, practices and customs of Defendants as evidenced in paragraphs "87" through "97" of this Amended Complaint include the failure to respond to serious medical needs documented by inmates by way of medical request forms, the

prescribing and providing of painkillers when inappropriate or inadequate to treat inmates serious medical needs, denial of access to necessary emergency room care, denial of access to outpatient care, denial of testing, imaging and biopsies in order properly diagnosis serious and/or life threatening medical conditions, and the failure to diagnose and monitor life-threatening illnesses and chronic diseases.

177.     Further, the aforementioned policies, practices and customs of Defendants were in furtherance of the improper motive of reducing costs and/or increasing profits while denying adequate and necessary care to inmates and detainees.

178.     Defendants ORANGE and DUBOIS were on notice of these policies, practices and customs of Defendants H.I.G., WELLPATH, WELLPATH NY, and KHOURI and failed to take any action to prevent the harm caused to inmates such as MR. FREUDENBERG.

179.     That the policies, practices, and customs of Defendants ORANGE, H.I.G., WELLPATH, WELLPATH NY, DUBOIS, KHOURI and DOE 2-10 led to the refusal to provide adequate medical care to MR. FREUDENBERG; to the delay of proper care to MR. FREUDENBERG; to the negligent training of its employees; to the lack of physician access for MR. FREUDENBERG: and to the misdiagnosis and indifference of the serious medical needs of MR. FREUDENBERG and deprived him of the rights, privileges, and immunities secured by the Fourteenth Amendments of the United States Constitution, in violation of 42 U.S.C. §1983.

## FOURTH CAUSE OF ACTION

**PURSUANT TO 42 U.S.C. § 12131 *et seq.* AMERICANS WITH DISABILITIES ACT**

180.     Plaintiff realleges and incorporates by reference each and every allegation set

forth in the foregoing paragraphs as if fully set forth herein.

181.     Title II of the ADA, prohibits a public entity from excluding a person with a

disability from participating in, or otherwise benefiting from, a program of the public

entity, or otherwise discriminating against a person on the basis of disability. 42 U.S.C.

§ 12132. "No qualified individual with a disability shall, by reason of such disability, be

excluded from participation in or be denied the benefits of the services, programs, or

activities of a public entity, or be subjected to discrimination by any such entity."

182.     "Public entities" includes state and local governments, their agencies, and their

instrumentalities. 42 U.S.C. § 12131(1). Defendant County is a public entity.

183.     The term "disability" includes a physical disability that "substantially limits one

or more major life activities." 42 U.S.C. § 12102(2). A "qualified individual with a

disability" is defined as an "individual with a disability who, with or without reasonable

modification to rules, polices, or practices, the removal or architectural, communication,

or transportation barriers, or the provision of auxiliary aids and services, meets the

essential eligibility requirements for the receipt of services or the participation in

programs or activities provided by a public entity." 42 U.S.C. § 12131(2).  MR.

FREUDENBERG was a qualified individual with a disability within the meaning of the

statutes, in that he has impairments which substantially limit one or more major life

activities.  The term "disability" includes a "mental impairment that substantially limits

one or more major life activities," 42 U.S.C. § 12102(1)(A), as well as "being regarded

as having such an impairment," 42 U.S.C. § 12102(1)(C). MR. FREUDENBERG had

mental impairments that substantially limit one or more of his major life activities such

as thinking, communicating, working, and interacting, or are perceived as having such mental impairments.

184.     MR. FREUDENBERG was also held in pre-trial custody in the custody of Defendant County, and HIG and WELLPATHand thus is subject to corrections activities conducted by Defendant, and thus is eligible to participate in and receive the programs, services, activities, and accommodations provided voluntarily or involuntarily by the Defendants attendant to a pre- trial detention.

185.     Pre-trial detention constitutes a vital program, service, or activity provided by Defendants. Defendants failed to provide MR. FREUDENBERG with meaningful access to the programs, services, activities, including medical care, in violation of the ADA.

186.     Defendant County, HIG and WELLPATH and the Individual Defendants have a duty to comply with ADA interpreting and implementing regulations, including 28 Code of Federal Regulations Section 1. 35.152 "Jails, Detention and Correctional Facilities, and community correctional Facilities." This section "applies to public entities that are responsible for the operation or management of adult … jails, detention and correctional facilities … either directly or through contractual, licensing or other arrangements with public or private entities, in whole or in part, including private correctional facilities."

    a.   Section 35.152 additionally provides that:

1.Public entities shall ensure that qualified inmates or detainees with disabilities shall not, because a facility is inaccessible to or unusable by individuals with disabilities, be excluded from participation in, or be denied the benefits of, the services, programs, or activities of a public entity. Defendants failed to provide reasonable accommodations to

individuals with mental health disabilities, including MR. FREUDENBERG, by failing to provide: reasonable accommodations to allow Plaintiff access to appropriate medial treatment, for the sole purpose of punishment, and other conduct that discriminates against MR. FREUDENBERG thereby having deprived MR. FREUDENBERG of the rights guaranteed by the ADA and accompanying federal regulation applicable to the confinement of individuals with disabilities.

187.     MR. FREUDENBERG was discriminated against and deprived of equal access to, and the benefits of, health and public safety services because of his disability.

188.     Defendants had been deliberately indifferent to MR. FREUDENBERG by reason of his disability, denying him the benefits of the services, programs, and activities to which they are entitled as persons with mental disabilities, including, but not limited to, the right to be free of discriminatory or disparate treatment by virtue of their mental disability or perceived mental disability. As a result, MR. FREUDENBERG suffered harm in violation of this rights under the ADA, 42 U.S.C. § 12132.

189.     Defendants also discriminated against MR. FREUDENBERG under the ADA by not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual.

190.     Defendants failed to accommodate MR. FREUDENBERG by failing to provide health services to him, and instead, (a) ignored his pleads for medical attention, (b) thinking that he did not know what was going on in his body because of his disability, (c) using excessive and improper drugs rather than treatment, (d) wrongly determining - that because of his disability- that he required anti-anxiety medication, and (e) inappropriately drugging him into a sleepy stupor.

191.     The County and Wellpath, H.I.G. have also failed to take appropriate steps to (a) ensure that communications with members of the jail population with disabilities are as effective as communications with others; (b) furnish appropriate aids and services where necessary to afford an individual with a disability an equal opportunity to enjoy the benefits of a service, program, or activity conducted by the public entity; (c) and give primary consideration to the requests of the individual with a disability in determining what type of aid and service is necessary. *See* 28 C.F.R. § 35.160. The Defendants must ensure that persons with mental disabilities can obtain information as to the existence and location of accessible services, activities, and facilities. *See* 28 C.F.R. §35.163(b).

192.     As a result of Defendants' acts and omissions, MR. FREUDENBERG was not treated for his physical ailments- and his concerns were dismissed-  he suffered injury and damages including, inter alia, physical and mental pain, suffering, humiliation and mental anguish, and death.


**FIFTH CAUSE OF ACTION**

**PURSUANT TO 29 U.S.C. § 794, *et seq.* REHABILITATION ACT OF 1973**

193.     Section 504 of the Rehabilitation Act provides that "[N]o otherwise qualified individual with a disability...shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance." 29 U.S.C. § 794.

194.     MR. FREUDENBERG qualified as an "individual with a disability" as defined by 29 U.S.C. §705(2))(B) and 42 U.S.C. § 12102(2).

195.    Defendant County, HIG, and WELLPATH, and its agencies, received federal financial assistance for law enforcement and criminal processing related programs and facilities adequate to invoke the coverage of Section 504 at all times relevant herein. 29 U.S.C. § 794(b).

196.    Defendants have failed and continue to fail to provide reasonable accommodations to individuals with mental health disabilities, including MR. FREUDENBERG; by failing to provide: reasonable accommodations to allow MR. FREUDENBERG access to appropriate medical care; thereby having deprived MR. FREUDENBERG of the rights guaranteed by the ADA and accompanying federal regulation applicable to the confinement of individuals with disabilities.

197.    As a result of Defendants' acts and omissions, MR. FREUDENBERG was denied the reasonable accommodation or immediate care required, and continued until his death to have his liberty unnecessarily and unreasonably restricted, and otherwise suffered injury and damages including, *inter alia*, physical and mental pain, suffering, humiliation, and mental anguish, and death.

198.    The acts of the Individual Defendants were intentional, wanton, malicious, reckless, and oppressive, thus entitling Plaintiff to an award of punitive damages.

## SIXTH CAUSE OF ACTION

### Medical Malpractice under State Law

199.    Plaintiff realleges and incorporates by reference each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

200.    That from December 2018 until July 3, 2021, the medical treatment provided to MR. FREUDENBERG was given and rendered in an improper, negligent, and careless manner in that Defendants ORANGE, H.I.G., WELLPATH, WELLPATH NY, DUBOIS, DOE 1, KHOURI, ZACCAGNINO and DOE 2-10 failed to employ the skill, care, and diligence commonly and ordinarily possessed by, and required of medical providers in the same locality; and in that Defendants ORANGE, H.I.G., WELLPATH, WELLPATH NY, DUBOIS, DOE 1, KHOURI, ZACCAGNINO and DOE 2-10 failed to employ reasonable and proper steps, procedures, and practices for the health, welfare, and safety of MR. FREUDENBERG.

201.    That as a result of Defendants medical malpractice, MR. FREUDENBERG suffered injuries including but not limited to tremendous conscious pain and suffering; loss of enjoyment of life; emotional upset, shock and fright, and death.

202.    That by reason of the aforesaid cause of action, MR. FREUDENBERG was damaged in an amount which exceeds the jurisdictional limitations of all lower courts which would otherwise have jurisdiction over this action.

203.

## SEVENTH CAUSE OF ACTION

### *Respondeat Superior* Under State Law

204.    Plaintiff realleges and incorporates by reference each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

205.    That Defendants DUBOIS, DOE 1, KHOURI, ZACCAGNINO and DOE 2-10 were hired and employed by Defendants ORANGE, H.I.G., WELLPATH, WELLPATH NY, DUBOIS, KHOURI and DOE 2, and acted in furtherance and within the scope of said

employment at all times between December 2018 and July 3, 2021.

206.    That Defendants ORANGE, H.I.G., WELLPATH, WELLPATH NY, DUBOIS, DOE 1, KHOURI and DOE 2 had the ability to control, command, manage, supervise, and direct their respective employees at all times between December 2018 and July 3, 2021.

207.    That Defendants ORANGE, H.I.G., WELLPATH, WELLPATH NY, DUBOIS, DOE 1, KHOURI and DOE 2 are vicariously liable for the tortious acts committed by their employees within the scope of the employment relationship and are vicariously liable for the injuries sustained by MR. FREUDENBERG.

208.    That by reason of the aforesaid cause of action, MR. FREUDENBERG was damaged in an amount which exceeds the jurisdictional limitations of all lower courts which would otherwise have jurisdiction over this action.

## EIGHTH CAUSE OF ACTION

### Negligent Hiring, Supervision and Retention under State Law

209.    Plaintiff realleges and incorporates by reference each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

210.    That Defendants ORANGE, H.I.G., WELLPATH, WELLPATH NY, DUBOIS, KHOURI and DOE 2, negligently hired. supervised, and retained DUBOIS, DOE 1, KHOURI, ZACCAGNINO and DOE 2.

211.    That Defendants ORANGE, H.I.G., WELLPATH, WELLPATH NY, DUBOIS, KHOURI and DOE 2-10 owed a duty to MR. FREUDENBERG to ensure that he received adequate and proper medical care and breached that duty when they negligently hired, supervised, and retained unqualified and careless companies in Defendants H.I.G.

WELLPATH and/or WELLPATH NY.

212. That Defendants H.I.G., WELLPATH and WELLPATH NY presented a foreseeable risk of harm to MR. FREUDENBERG in that they previously provided inadequate medical care to other inmates that caused multiple deaths; that they have had hundreds of federal lawsuits filed against them; that they overall were wholly unfamiliar with the proper methods of providing comprehensive health care to OCCF inmates and detainees; and that Defendants ORANGE, SHERIFF and OCCF knew, should have known, and were specifically warned of the probable danger to OCCF inmates and detainees regarding H.I.G., WELLPATH and/or WELLPATH NY being selected to deliver comprehensive health services.

213. That Defendants ORANGE and DUBOIS disregarded this foreseeable risk when they hired and retained the services of H.I.G., WELLPATH and/or WELLPATH NY, as independent contractors.

214. That as a result of the aforementioned negligence, MR. FREUDENBERG suffered injuries including but not limited to tremendous conscious pain and suffering; loss of enjoyment of life; emotional upset. shock, and flight; and death.

215. That by reason of the aforesaid cause of action, MR. FREUDENBERG was damaged in an amount which exceeds the jurisdictional limitations of all lower courts which would otherwise have jurisdiction over this action.

## **NINTH CAUSE OF ACTION**

### **Wrongful Death Under State Law**

216. Plaintiff realleges and incorporates by reference each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

217.    That as a result of the negligence of the Defendants, MR. FREUDENBERG suffered and sustained serious injuries including but not limited to tremendous conscious pain and suffering; loss of enjoyment of life; emotional upset, shock and fright; and death.

218.    That MR. FREUDENBERG died intestate on July 3, 2021 from complications of stage IV lung cancer, leaving as his surviving next of kin a daughter who had a reasonable expectation of support from MR. FREUDENBERG and was entitled to his comfort and the enjoyment of his society.

219.    That by reason of the aforesaid cause of action, MR. FREUDENBERG was damaged in an amount which exceeds the jurisdictional limitation of all lower courts which would otherwise have jurisdiction over this action.


## **DEMAND FOR RELIEF**

**WHEREFORE**, plaintiff demands the following relief against the defendants, jointly and severally:

(a)    compensatory damages in an amount just and reasonable and in conformity with the evidence at trial;

(b)    punitive damages from the individual defendants to the extent allowable by law;

(c)    attorneys' fees;

(d)    the costs and disbursements of this action;

(e)    interest; and

(f)    such other and further relief as this Court deems just and proper.


Dated: Bronx, New York
       March 1, 2023

Respectfully Submitted,

/s/

**P. JENNY MARASHI, ESQ.**
Attorney for Plaintiff
930 Grand Concourse, Suite 1E
Bronx, NY 10451
917-703-1742
Marashi.legal@gmail.com