

Scott M. Kessler

Akerman LLP
1251 Avenue of the Americas,
37th Floor
New York, NY 10020

T: 212.880.3800
F: 212.880.8965

July 18, 2023

**VIA EMAIL & ECF**

P. Jenny Marashi, Esq.
Marashi Legal
930 Grand Concourse #1E
Bronx, NY 10451
marashi.legal@gmail.com

RE: *Michelle Freudenberg v. County Orange, et al.*, **Case No. 7:23-cv-00847**

Dear Ms. Marashi,

Please allow this letter to serve as our pre-motion letter regarding Defendant H.I.G. Capital, LLC's ("HIG") Motion to Dismiss the Second Amended Complaint ("Complaint") ("Motion"). The Motion will be based on the grounds that <u>all</u> claims asserted against HIG fail to state a claim upon which relief can be granted.

HIG is a leading global private equity firm and investment manager with an investment portfolio of over 70 companies. HIG is responsible for identifying and making investments on behalf of a limited partnership private equity fund and performs diligence and oversight on those investments. Significantly, contrary to Plaintiff's boilerplate allegations, HIG <u>does not</u> hold any ownership interest in its investment portfolio companies.

The Complaint appears to allege the following claims against HIG: Section 1983 - Supervisor Liability (claim no. 2), *Monell* claim (claim no. 3), Americans with Disabilities Act (claim no. 4), Rehabilitation Act (claim no. 5), and Respondeat Superior (claim no. 7).[1] However, the Complaint fails to meet the fundamental requirement of Fed. R. Civ. P. 8(a)(2) and does not allege any factual basis for holding HIG liable or responsible for any of the alleged wrongdoing. Further, to the extent that Plaintiff avers that HIG's liability is based on its alleged alter ego relationship with Wellpath or Wellpath of NY, those allegations are fatally deficient, as well.

**A. Plaintiff's Alter Ego Allegations Are Fatally Deficient**

Under New York law, two elements are required to pierce the corporate veil: (1) the parent

---

[1] To the extent that the Complaint purports to assert any other claims against HIG, HIG is not identified in the headings or allegations of those claims. Thus, HIG is not provided with appropriate notice of those claims, as required by Fed. R. Civ. P. 8(a)(2).

must exercise complete domination with respect to the transaction attacked, and (2) such domination must have been used to commit fraud or wrong against the plaintiff, which proximately caused the plaintiff's injury. *Morris v. NY State Dep't of Tax'n & Fin.,* 82 N.Y.2d 135, 141 (1993). The plaintiff bears a "heavy burden" in showing that the corporation is being "used by an individual to accomplish his own and not the corporation's business." *Feitshans v. Kahn,* 2007 WL 2438411, at *3 (S.D.N.Y. Aug. 24, 2007).

Moreover, "purely conclusory allegations cannot suffice to state a claim based on veil-piercing or alter ego liability, even under the liberal notice pleading standard." *Sysco Food Serv. of Metro NY, LLC v. Jekyll & Hyde, Inc.*, 2009 WL 4042758, at *3 (S.D.N.Y. Nov. 17, 2009) (citing *In Re Currency Conversion Fee Antitrust Litigation*, 265 F.Supp.2d 385, 426 (S.D.N.Y. 2003). Where a complaint is "devoid of any description of the relationship between [] corporations," it is an insufficient pleading for piercing the corporate veil. *Id.* (citing *Binder v. Nat'l Life of Vermont*, 2003 WL 21180417, at *3 (S.D.N.Y. May 20, 2003).

### 1. Plaintiff's Control Allegations Are Insufficient

The Complaint alleges that HIG is responsible for Eric Freudenberg's death because HIG is the *alter ego* of Wellpath and/ or Wellpath NY. Wellpath NY is a private correctional healthcare provider in the Orange County Correctional Facility ("OCCF"), where Mr. Freudenberg died on July 3, 2021, due to stage IV lung cancer complications. Plaintiff's *alter ego* allegations are completely unfounded and unsupported by any facts.

Under New York law, "control, whether of the subsidiaries by the parent or the corporation by its stockholders, *is the key*; the control must be used to commit a fraud or other wrong that causes plaintiff's loss." *Wm. Passalacqua Builders, Inc. v. Resnick Devs. South*, *Inc*., 933 F.2d 131, 138 (2d Cir. 1991) (emphasis added).

Courts determine whether a plaintiff has adequately pleaded dominion and control by assessing whether it has established certain factors, including:

> (1) disregard of corporate formalities; (2) inadequate capitalization; (3) intermingling of funds; (4) overlap of ownership, officers, directors, and personnel; (5) common office space, address and telephone numbers of corporate entities; (6) the degree of discretion shown by the allegedly dominated corporation; (7) whether the dealings between the entities are at arm's length; (8) whether the corporations are treated as independent profit centers; (9) payment of the corporations' debts by the dominating entity, and (10) intermingling of property between the entities.

*Freeman v. Complex Computing Co.,* 119 F.3d 1044, 1053 (2d Cir. 1997); *see also Wm. Passalacqua Builders, Inc*., 933 F.2d at 139.

Here, Plaintiff does not plead any facts (because she cannot) alleging any of these factors. Instead, Plaintiff alleges, in a completely conclusory manner, that Wellpath was and is *owned and controlled* by HIG. (Compl., ¶¶ 45-49). Plaintiff ultimately concludes that "[t]here is [a] unity of interest and ownership such that the separate personalities of HIG and Wellpath no longer exist," that "HIG's use of Wellpath is but a mere shell, an instrumentality or conduit for the business of financially profiting from providing medical care to the inmates and detainees of jails through these shell companies" and that "recognition of HIG as a separate corporate entity would promote injustice." (*Id.*, ¶¶ 62-64).

But, Plaintiff's bare legal conclusions and unwarranted factual inferences of dominion and control are insufficient to state a claim to relief that is plausible enough on its face to support veil piercing. *See Sysco Food Serv.*, 2009 WL 4042758, at *3 (conclusory alter ego allegations not sufficient). Wholly absent from the Complaint is a single allegation of commingling of funds, failure to maintain records, failure to observe corporate formalities, failure to maintain arm's length dealings, the degree of discretion demonstrated by the allegedly dominated corporation, or inadequate capitalization. As set forth above, New York law requires more. Moreover, the fact that HIG purportedly maintained control over the corporation as members of the board of directors is insufficient to support a finding that it had the requisite control for alter ego purposes. *See, e.g.*, *Forum Ins. Co. v Texarkoma Transp. Co.*, 229 A.D.2d 341, 342 (1996). Indeed, the existence of interlocking directorates is a "commonplace circumstance of modern business [and it] does not furnish such proof of control as will permit a court to pierce the corporate veil." *Am. Protein Corp. v. AB Volvo*, 844 F.2d 56, 60 (2d Cir. 1988). Further, as the Supreme Court stated in *Bestfoods*, "it is entirely appropriate for directors of a parent corporation to serve as directors of its subsidiary, and that fact alone may not serve to expose the parent corporation to liability for its subsidiary's acts." *U.S. v. Bestfoods,* 524 U.S. 51, 69 (1998) (citing *Am. Protein Corp.*, 844 F.2d at 57).

Moreover, Plaintiff's allegation that "HIG acquired CCS and renamed it Wellpath" is lifted from similar complaints filed in other districts. *E.g.*, *Estate of Ricardez, et al. v. County of Venture,* 2:20-cv-00079-JFW (ASx), *et al.*, Central District of California, *see* Dkt. No. 57; *see also Estate of Anderson, et al. v. County of Fresno*, 1:21-cv-01134-ADA-SAB, Eastern District of California, *see* Dkt. No. 20. However, that conclusory allegation, alone, is insufficient to state a claim for alter ego liability.

Indeed, in *Estate of Ricardez*, the court dismissed a similar complaint against HIG arising from almost identical conclusory allegations. *Est. of Ricardez v. Cty. of Ventura*, 2020 WL 3891460, at *7 (C.D. Cal. June 24, 2020), cert. denied sub nom. *Ricardez v. Cty. of Ventura*, 2020 WL 7862129 (C.D. Cal. Aug. 6, 2020) (dismissal with prejudice for failure to allege an alter ego or agency relationship between HIG and CFMG and for failure to allege that HIG acted under color of law).[2] That opinion is instructive when it states that the plaintiff's allegations of HIG's

---

[2] *See also* other opinions dismissing almost identical allegations against HIG: *Francine Bible-Marshal v. Montgomery County*, Case No. 4:20-cv-00028, Dkt. No. 47, slip op. at p. 7 (S.D. Tex. Sept. 28, 2020) (inmate death case, dismissing a similar complaint as to HIG); *Estate of Sarah R.*

alter ego liability fail because there were no allegations of the "numerous factors that could be alleged (but have not been) to demonstrate a unity of interest." *See* 2020 WL 3891460, at *4. The same is true here, where Plaintiff's allegations mirror other complaints the allegations are lifted from, but conveniently ignore the distinction between HIG and that affiliate and, in disregarding basic principles of corporate separateness, treat both entities as one and the same.

### B. Plaintiff's Fraud or Wrongdoing Allegations Are Insufficient

Because Plaintiff has not satisfied the first prong of the alter ego analysis, the Court is not required to proceed any further and may dismiss Plaintiff's claim on that basis alone. *See RMS Techs., Inc. v. Nynex Computer Servs. Co.,* 1993 WL 763469, at *2 (Sup. Ct. N.Y. County June 21, 1993) (dismissing alter ego claim without analyzing second prong where plaintiff failed to establish domination and control); *see also Sysco Food,* 2009 WL 4042758, at *3 (citation omitted). Nevertheless, Plaintiff's attempt to plead the second prong of the alter ego analysis also fails as a matter of law.

It is well-settled New York law that "the party seeking to pierce the corporate veil must establish that the owners, through their domination, abused the privilege of doing business in the corporate form to perpetrate a wrong or injustice" against the claimant. *Morris,* 82 N.Y.2d at 142; *see also Freeman,* 119 F.3d at 1053 (stating that the proponent of the alter ego claim must show "that th[e] control was used to commit wrong, fraud, or the breach of a legal duty, or a dishonest and unjust act in contravention of [its] legal rights" (citation omitted)); *East Hampton Union Free Sch. Dist. v. Sandpebble Builders, Inc.,* 16 N.Y.3d 775, 776 (2011) (affirming dismissal of veil-piercing Complaint where plaintiff alleged only "improper acts" and "bad faith" and alleged no facts indicating "an abuse or perversion of the corporate form").

Moreover, the proponent of the alter ego theory must also allege a causal nexus between the purported fraud or misconduct and its loss or injuries. Indeed, some courts consider the causal link an additional prong of the veil-piercing analysis. *See RMS Techs., Inc.,* 1993 WL 763469, at *2 (requiring alter ego claims to allege that "the control and its misuse caused the loss" as the third prong of the veil-piercing analysis).

Plaintiff's allegations pertaining to the second prong are limited to a single sentence that "[r]ecognition of HIG as a separate corporate entity would promote injustice and defeat the rights and equities of persons such as Mr. Freudenberg." (Compl., ¶ 64). Thus, like with the control prong, Plaintiff's mere conclusory allegations, unsupported by facts, are legally insufficient to properly allege the "wrong or injustice" prong of the *alter ego* claim. Further, Plaintiff does not even attempt to allege a causal nexus between the alleged misconduct of HIG and her loss.

---

*Seybold v. Tazewell County*, Case No. 1:20-01386, Dkt. No. 43, slip op. (Central Il. Jan. 6, 2022) (same).

In sum, as a matter of law, Plaintiff's bare and conclusory allegations fail to adequately allege her purported *alter ego* theory, absent which Plaintiff has no viable claim against HIG. Consequently, <u>all</u> claims against HIG are subject to dismissal.[3]

### C. Plaintiff Does Not Allege that HIG Is a State Actor

With respect to the second and third claims brought under 42 U.S.C. § 1983, Plaintiff has failed to properly allege that HIG is a state actor. To state a claim under Section 1983, Plaintiff must allege a deprivation of a constitutional right under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *see also Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002).

Private conduct may be attributable to the state only if: (1) the private entity acts pursuant to the coercive power of the state or is controlled by the state (the "compulsion" test); (2) the state provides significant encouragement to the entity, the entity is a willful participant in joint activity with the state, or the entity's functions are entwined with state policies (the "joint action" or "close nexus" test); or (3) the entity has been delegated a public function by the state (the "public function" test). *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008).

Plaintiff has failed to allege adequately that HIG is a state actor under any of the tests mentioned above. Plaintiff's statement that "[m]edical care providers, employees and agents (such as HIG) employed by a government entity are state actors for 42 U.S.C. § 1983 purposes acting under color of law when treating inmates and/or implementing policies and practices regarding provision of medical care" (Compl. ¶ 40), is unsupported by any legal authority or facts alleged. Indeed, the Complaint is devoid of any factual allegations that HIG was a "medical care provider," "employed by a government entity," "treating inmates," or "implementing policies and practices regarding provision of medical care." Likewise, Plaintiff's conclusory proclamation that "[p]rivate managers, executives, managers, owners, directors, board members, supervisors, (such as HIG) employed to direct the delivery of medical care to inmates are state actors acting under color of law for purposes of § 1983" (Compl. ¶ 41) has no support in law, nor are there facts alleged supporting this purported legal conclusion.

Furthermore, Plaintiff contradicts her purported state actor allegations by alleging that HIG is a private equity company, foreign corporation / limited liability company, private business with its principal office in Tennessee, doing business in the State of New York. (Compl., ¶¶ 23-24, 26-

---

[3] Plaintiff also claims, without providing any support, that "Wellpath and their employees are agents of HIG." (Compl., ¶¶ 65-66). Under New York law, specific factual allegations regarding agency relationship are required. *See, e.g., Shcherb v. Angi Homeservices Inc.,* 2020 WL 2571041, at *2 (S.D.N.Y. May 21, 2020); *RSM Production Corp. v. Fridman*, 643 F. Supp. 2d 382, 408 (S.D.N.Y. 2009). Thus, Plaintiff's agency allegations are insufficient.

27, 46). Plaintiff cannot have it both ways -- on the one hand, alleging that HIG is a state actor and, on the other, that HIG is a private equity firm. For these reasons, all Plaintiff's state actor claims fail.

### D. Plaintiff's Section 1983 Claims Fail

Even if HIG were a state actor (which it clearly is not), Plaintiff has also failed to set forth any factual allegations to support their section 1983 claims.

#### 1. Plaintiff's Claim for Section 1983 Supervisor Liability Fails

It is well settled that the personal involvement of the defendant is a prerequisite to liability under § 1983. *Provost v. City of Newburgh*, 262 F.3d 146, 154 (2d Cir. 2001). Personal liability cannot be imposed on a state official under a theory of respondeat superior. *Monell v. Dep't of Soc. Svcs.*, 436 U.S. 658, 694 (1978). Moreover, the Supreme Court in *Ashcroft v. Iqbal*, has held that "supervisory liability" is a misnomer, and the basis for liability against a supervisor must be his or her own conduct that violates the plaintiff's rights. 556 U.S. 662, 677 (2009). In *Tangreti v. Bachmann*, 983 F.3d 609, 619 (2d Cir. 2020), the Second Circuit confirmed that a Section 1983 plaintiff must directly plead and prove that "each Government-official defendant, through the official's own individual actions, has violated the Constitution." *See id*. (citing *Iqbal*, 556 U.S. at 676).

Here, Plaintiff has not and cannot allege HIG's personal involvement. The Complaint's generalized and conclusory allegations directed at HIG (and other institutional defendants) confirm the same. (Compl., ¶¶ 166-168). Accordingly, Plaintiff's Section 1983 Supervisory Liability claims against HIG should be dismissed.

#### 2. Plaintiff's *Monell* Claim Fails

Plaintiff's *Monell* claim against HIG is likewise untenable. For a plaintiff to state a plausible *Monell* claim, a complaint must allege that a municipal policy of some kind caused a constitutional tort, such that it was the "moving force" behind the alleged constitutional violation. *Monell*, 436 U.S. at 694-695. "[T]o prevail on a claim against a municipality under Section 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." *Berry v. Vill. of Millbrook*, 815 F. Supp. 2d 711, 716-18, (S.D.N.Y. 2011) (citing *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008)). The fifth element reflects the notion that "a municipality may not be held liable under § 1983 solely because it employs a tortfeasor." *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997). Instead, there must be a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *see also Roe*, 542 F.3d at 37.

"In determining municipal liability, it is necessary to conduct a separate inquiry into whether there exists a 'policy' or 'custom.'" *Davis v. City of New York,* 228 F.Supp.2d 327, 336 (S.D.N.Y. 2002), *aff'd,* 75 Fed.Appx. 827 (2d Cir. 2003).

Further, "a custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the [municipality]." *Newton v. City of New York,* 566 F.Supp.2d 256, 271 (S.D.N.Y. 2008); *Brogdon v. City of New Rochelle*, 200 F.Supp.2d 411, 427 (S.D.N.Y. 2002) ("A single incident by itself is generally insufficient to establish the affirmative link between the municipal policy or custom and the alleged unconstitutional violation."). In the end, therefore, "a plaintiff must demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the alleged injury." *Roe*, 542 F.3d at 37 (citing *Brown*, 520 U.S. at 404).

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff can satisfy *this policy or custom* requirement by plausibly alleging one of the following:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policymaker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Jones v. Westchester Cty*, 182 F. Supp. 3d 134, 158 (S.D.N.Y. 2016).

Here, Plaintiff not only failed to state any plausible allegations that HIG is a state actor (which is, of course, fatal to her 1983 claims) but also has failed to allege any facts to plausibly support any of the four *Monell* theories against HIG and a causal connection between the policy and the alleged civil rights violation. Plaintiff only makes unsupported and very conclusory *Monell* allegations against numerous defendants, including HIG. At the outset, Plaintiff claims that "HIG, Wellpath and Wellpath NY supervisors, managers or executives were responsible for the hiring, retaining, training, and supervising of the *conduct, customs, policies and practices* of its member employees and agents." (Compl., ¶ 42) (emphasis added). This sweeping allegation is unsupported by any facts. Later, in paragraphs 97-113 of the Complaint, Plaintiff lists the purported policies, practices, and customs at issue, including failures to: protect inmates from harm and from serious risk from staff; ensure the provision of adequate screening and health assessments; implement appropriate medical screening instruments; provide access to healthcare; ensure a treatment following generally accepted professional standards of care; and provide quality care. (*Id*., ¶¶ 173, 97-103). Plaintiff also mentions, without giving any detail, that Wellpath entities and HIG have been named in numerous lawsuits, that CNN issued a report regarding Wellpath's care, and purports to incorporate a complaint filed by Catholic Charities Community Services (*Id*., ¶¶ 103-

112). In the allegations specific to the *Monell* claim, Plaintiff simply concludes that "the actions, omissions, and decisions made by [HIG, among other defendants] regarding the provision of comprehensive health care to OCCF inmates and detainees constitute their policies, practices and customs" and that those policies, practices, and customs were inadequate, constituted deliberate indifference to serious medical needs, and caused harm to inmates, including Mr. Freudenberg. (Compl., ¶¶ 171-176).

None of these allegations are supported *by any facts*, as *Twombly* and *Iqbal* require. Plaintiff's continued failure to allege any HIG-specific conduct that ties it to the alleged wrongs that form the basis of this lawsuit violates both Plaintiff's pleading obligations and fundamental rules of fairness. Plaintiff has not alleged any facts to support an inference that HIG was a state actor and a medical care provider and had a custom or practice of providing inadequate medical care to inmates, which caused the constitutional violation at issue – nor could she. Although there is no heightened pleading requirement for complaints alleging municipal liability under § 1983, *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993), it is well-settled that a complaint does not "suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal citations omitted).

To survive a motion to dismiss, a plaintiff cannot merely allege the existence of a municipal policy or custom but "must allege facts tending to support, at least circumstantially, an inference that such a municipal policy or custom exists." *Santos v. New York City,* 847 F.Supp.2d 573, 576 (S.D.N.Y. 2012). Here, Plaintiff has failed to do so. Further, Plaintiff's conclusory allegations of HIG's purported patterns of conduct regarding medical care and unspecified actions and omissions that constitute "official policy and custom" must also be disregarded. *See id*. (citing *Simms v. City of New York*, 2011 WL 4543051, at *3 (E.D.N.Y. Sept. 28, 2011) (dismissing allegations that did not provide any facts that would allow the court to infer what city policies or practices led to the alleged deficiency, and contained only legal conclusions and boilerplate), aff'd, 480 Fed.Appx. 627 (2d Cir. 2012); *see also Perez v. Metro. Transp. Auth.*, 2012 WL 1943943, at *4 (S.D.N.Y. May 29, 2012) ("The custom and policy must be described with factual specificity, rather than bare and conclusory statements.").

In sum, Plaintiff's conclusory allegations rely on "naked assertion[s] devoid of further factual enhancement" and do not contain "sufficient factual matter ... to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. Accordingly, Plaintiff's *Monell* claim fails.

### E. Plaintiff's ADA Claim Fails

Plaintiff also alleges a violation of Title II of the Americans with Disabilities Act ("ADA") ("ADA") Title II. While Plaintiff does not allege that HIG is a "public entity" for the purposes of the ADA, (Compl., ¶ 179), she alleges HIG has a duty to comply with ADA. Plaintiff's ADA allegations are confusing and entirely unsupported.

Title II of the Americans with Disabilities Act ("ADA") provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity or be subjected to discrimination by any such entity." 42 U.S.C. § 12132 (emphasis added). For purposes of the ADA, the term "public entity" is defined as:

> (A) any State or local government;
> (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government; and
> (C) the National Railroad Passenger Corporation, and any commuter authority (as defined in section 24102(4) of Title 49).

*See* 42 U.S.C. § 12131(1)(A), (B), (C).

The ADA, therefore, does not apply to individuals or private entities. *See Green v. City of New York*, 465 F.3d 65, 78-79 (2d Cir. 2006)(affirming dismissal of ADA claim against private individual and private hospital because they did not qualify as "public entities" under plain language of Section 12131); *Positano v. Zimmer*, 2013 WL 12084482, at *4 (E.D.N.Y. Dec. 9, 2013) (observing Title II "does not [apply to] private individuals or private entities").

For these reasons, Plaintiff's ADA claim fails.

### F. Plaintiff's Rehabilitation Act Claim Fails

29 U.S.C. Section 794 Rehabilitation Act ("RA") is a remedial scheme for the ADA. As set forth above, HIG is not a public entity; thus, it <u>does not</u> fall under the ADA or its remedial scheme – the RA.

Specifically, 29 U.S.C. § 794 provides:

> No otherwise qualified handicapped individual in the United States ...shall, solely by reason of his handicap, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under *any program or activity receiving Federal financial assistance*....

(Emphasis added).

Plaintiff alleges that "Defendant[s] County, HIG, and Wellpath, and [their] agencies, received federal financial assistance …" (Compl., ¶ 192). Plaintiff's conclusory allegation is unsupported by any fact -- nor can be -- and, thus, fails under *Iqbal*. Contrary to Plaintiff's assertion, HIG <u>does not</u> receive any "Federal financial assistance." Further, HIG does not fall under the definition of "programs and activities" set forth under Section 794(b) of the RA.

Moreover, even if HIG fell under the RA, which it does not, the Second Circuit requires plaintiffs seeking monetary damages under the RA to prove that the defendants acted intentionally. *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 275 (2d Cir. 2009). "The standard for intentional violations is 'deliberate indifference to the strong likelihood [of] a violation.'" *Id.* (internal citations omitted). "A plaintiff demonstrates deliberate indifference by pointing to evidence [that] the official with authority to address the alleged discrimination and to institute corrective measures on Plaintiff's behalf had actual knowledge of ongoing discrimination against Plaintiff but failed to respond adequately." *Feltenstein v. City of New Rochelle,* 254 F.Supp.3d 647, 657 (S.D.N.Y. 2017) (internal citations omitted). "A defendant's actions must demonstrate 'deliberate choice ... rather than negligence or bureaucratic inaction.'" *Id.* (citing *Reynolds v. Giuliani*, 506 F.3d 183, 193 (2d Cir. 2007)). Here, Plaintiff has not made any such allegations against HIG (nor can she).

For all these reasons, Plaintiff's unsupported RA claim fails.

### G. Plaintiff's Respondeat Superior Claim Fails

Like with Plaintiff's other claims, her Respondeat Superior claim is entirely unsupported. It is well established that the doctrine of Respondeat Superior "renders a master vicariously liable for a tort committed by his [or her] servant within the scope of employment." *Beres v. Terranera*, 153 A.D.3d 483, 486 (2d Dep't 2017). It is well settled that an employer cannot be held liable if the employee was not in service at the time of the injury. *See Ramsey v. New York Cent. R. Co.,* 269 N.Y. 219, 224 (1935).

The Complaint does not make any allegations against HIG's employees for which HIG could be potentially vicariously liable. To the extent this claim is based on Plaintiff's conclusory alter ego allegations, it also fails, as discussed above.

***

For all the reasons stated above, Plaintiff's entire Complaint is subject to dismissal. HIG expressly reserves all of its rights, remedies, and defenses.

Very truly yours,

Scott M. Kessler

cc: Honorable Kenneth M. Karas, U.S.D.J. (via ECF)
    Jeffrey W. Rizzo, Esq. (via e-mail)
    Jason S. Oletsky, Esq. (via e-mail)
    Evelina Gentry, Esq. (via e-mail)