UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**MICHELLE FREUDENBERG, as Administratrix of the Estate of ERIC FREUDENBERG,**

　　　　　　　*Plaintiff,*

　　　-*vs*-

**COUNTY OF ORANGE, H.I.G. CAPITAL, LLC, WELLPATH, LLC (formerly known as CORRECT CARE SOLUTIONS MEDICAL SERVICES PC), WELLPATH NY, LLC, ORANGE COUNTY SHERIFF CARL E. DUBOIS in his official capacity, ORANGE COUNTY DEPUTY JOHN DOE 1 in their official and individual capacities, SALWA KHOURI, M.D. in her official and individual capacities, MANDI ZACCAGNINO, N.P. in her official and individual capacities, JOHN DOE 2-10, in their official and individual capacities,**

Civil No.: 7:23-cv-00847-KMK

　　　　　　　*Defendants.*

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' PRE-ANSWER MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6)

**BARCLAY DAMON LLP**
*Attorneys for Defendants*
*County of Orange, Wellpath, LLC (f//k/a*
*Correct Care Solutions Medical Services*
*PC), Wellpath NY, LLC, Orange County*
*Sheriff Carl E. Dubois, Salwa Khouri, M.D.*
*and Mandi Zaccagnino, N.P.*
Office and Post Office Address
100 Chestnut Street, Suite 2000
Rochester, New York 14604
Telephone (585) 295-4426
Email: psanders@barclaydamon.com

**PAUL A. SANDERS, ESQ**
**DAVID M. FULVIO, ESQ.**
　　*of Counsel*

i

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................... iii

PRELIMINARY STATEMENT ............................................................................. 1

RELEVANT FACTS AND PROCEDURAL HISTORY ..................................... 2

ARGUMENT ............................................................................................................ 5

      POINT I        THE APPLICABLE LEGAL STANDARD ............................................ 5

      POINT II      PLAINTIFF FAILS TO STATE A 42 U.S.C. 1983
                   DELIBERATE INDIFFERENCE CLAIM AGAINST THE
                   INDIVIDUAL MEDICAL DEFENDANTS .................................... 6

      POINT III     PLAINTIFF FAILS TO STATE A 42 U.S.C. § 1983
                   *MONELL* CLAIM AGAINST THE INSTITUTIONAL
                   DEFENDANTS ...................................................................................... 12

      POINT IV     PLAINTIFF FAILS TO STATE A 42 U.S.C. § 1983
                   *MONELL* CLAIM AGAINST THE INDIVIDUAL
                   MEDICAL DEFENDANTS AND SHERIFF DUBOIS .................. 16

      POINT V      PLAINTIFF FAILS TO STATE A 42 U.S.C. § 1983
                     SUPERVISORY LIABILITY CLAIM .............................................. 16

      POINT VI     PLAINTIFF FAILS TO STATE AN AMERICANS WITH
                   DISABILITY ACT CLAIM OR REHABILITATION
                   ACT CLAIMS ........................................................................................ 17

      POINT VII  PLAINTIFF FAILS TO STATE A CLAIM FOR
                   WRONGFUL DEATH ........................................................................ 21

      POINT VIII PLAINTIFF FAILS TO STATE A CLAIM FOR
                   *RESPONDEAT SUPERIOR* ........................................................... 21

CONCLUSION ........................................................................................................ 22

ii

# TABLE OF AUTHORITIES

**Cases**

*Alston v. Bendheim*, 672 F.Supp.2d 378, 388 (S.D.N.Y. Nov. 23, 2009) ................................................... 17

*Arnold v. Westchester County Corr. Facility*, 2011 U.S. Dist. LEXIS 88149, 13

    (S.D.N.Y. July 11, 2018) ...................................................................................................... 8

*Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) ............................................................................... 5, 16

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 [2007] ................................................................... 5

*Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996) ....................................................................... 11

*Bowman v. Campbell*, 850 F. Supp. 144, 147 (N.D.N.Y. April 29, 1994) ..................................... 7

*Brandon v. City of New York*, 705 F. Supp. 2d 261, 276-77 (S.D.N.Y. 2010) .............................. 13

*Broderick v. Research Found. Of State Univ. of New York*, 2010 U.S. Dist.

    LEXIS 82031, *3 (E.D.N.Y. Aug. 11, 2010) ...................................................................... 22

*Cantor Fitzgerald v. Lutnick*, 313 F.3d 704, 709 (2d Cir. 2002 (internal quotations omitted) .................... 5

*Charles v. Orange Cty.*, 925 F.3d 73, 86 (2d Cir. 2019) ................................................................. 6

*Clarkson v. Coughlin*, 898 F. Supp. 1019, 1037 (S.D.N.Y. June 16, 1995) ................................. 18

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) .......................................................... 11, 16, 17

*Camacho v. City of Buffalo*, 2021 U.S. Dist. LEXIS 198496, *17 (W.D.N.Y October 14, 2021) ............. 16

*Cox v. Jackson*, 579 F. Supp. 2d 831, 852 (E.D. Mich. 2008) ...................................................... 18

*Darnell v. Pineiro*, 849 F.3d 17, 29 [2d Cir. 2017] ....................................................................... 6

*Delee v. Hannigan*, 729 Fed. Appx. 25* 31, (2d Cir. 2018) ......................................................... 11

*Estelle v. Gamble*, 429 U.S. 97, 105 [1976] .......................................................................... 6, 7, 17

*Farrell v. Burke*, 449 F.3d 470 [2d Cir. 2006] .............................................................................. 12

*Fate v. Petranker,* 2020 U.S. Dist. LEXIS 1119103, *16 (S.D.N.Y. July 6, 2020) ...................... 16

*Genovese v. Town of Southampton*, 921 F. Supp. 2d 8, 24 (E.D.N.Y. Feb. 1, 2013) ................................ 21

*Gill v. Mooney*, 824 F.2d 192 [2d Cir. 1987]............................................................................................. 7

*Gonzalez v. McGue*, 2001 U.S. Dist. LEXIS 37, *7 (S.D.N.Y. Jan. 4, 2001) ........................................... 10

*Gonzalez v. N.Y.C. Hous. Auth.*, 77 N.Y.2d 663, 572 N.E.2d 598, 600-01, [N.Y. 1991]) .................. 10, 21

*Green v. City of New York*, 465 F.3d 65, 78-79 (2d Cir. 2006) ................................................................ 19

*Grubbs v. Ngbodi*, 2022 U.S. Dist. LEXIS 159155, 21 (S.D.N.Y. September 2, 2022)......................... 8, 11

*Hallett v. New York State Dep't of Corr. Servs.*, 109 F. Supp. 2d 190, 198

 (S.D.N.Y. August 14, 2000) ............................................................................................................. 18, 19

*Hardy v. Diaz*, U.S. Dist. LEXIS 39295 (N.D.N.Y. March 30, 2010)...................................................... 20

*Harrison* ....................................................................................................................................................... 9

*Hathaway v. Coughlin,* 99 F.3d 550, 554 (2d Cir. 1996)............................................................................ 7

*Haynes v. City of New York*, 2020 U.S. Dist. LEXIS 151193, 2020 WL 4926178, 11 (S.D.N.Y. Aug. 20,

 2020) .......................................................................................................................................................... 8

*Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003) ................................................................ 17

*Hernandez v. Keane*, 341 F.3d 137, 145 [2d Cir. 2003] ........................................................................... 17

*Iacovangelo v. Corr. Med. Care, Inc.* .................................................................................................. 14, 15

*Iqbal*, 556 U.S. at 678 ................................................................................................................................. 5

*Iqbal*, 556 U.S. at 679 ................................................................................................................................. 6

*Jemmott v. Coughlin*, 85 F.3d 61, 67 (2d Cir. 1996) ................................................................................ 21

*Jones v. Ng*, 2015 U.S. Dist. LEXIS 27105 (S.D.N.Y. March 5, 2015) .................................................. 20

*Kirton v. Doe*, 2023 U.S. Dist. LEXIS 47874, *29 (S.D.N.Y. 2023) ....................................................... 14

*Lainez v. Roycroft*, 2019 U.S. Dist. LEXIS 173797, 3 (S.D.N.Y. Oct. 7, 2019) ....................................... 8

*Maccharulo v. New York State Dep't of Corr. Servs.,*  2010 U.S. Dist. LEXIS 73312,

 *3 (S.D.N.Y. July 21, 2010) .................................................................................................................. 18

*McClean v. County of Westchester*, 2018 U.S. Dist. LEXIS 204269, *61 (S.D.N.Y. Dec. 3, 2018) ......... 13

iv

*Melvin v. County of* Westchester, 7:14-CV-02995 .............................................................................. 14, 21

*Monell v. Department of Soc. Servs.*, 436 U.S. 658, 694 (1978) ................................ 1, 2, 12, 13, 15, 16, 17

*Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986) ........................................................................ 21

*Raynor v. Feder,* 2023 U.S. Dist. LEXIS 172579, *19 (Dist. Conn. Sept. 27, 2023)................................ 10

*Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008) ...................................................................... 12

*Rojas v. Alexander's Dept. Store, Inc.*, 924 F.2d 406, 408 (2d Cir. 1990).................................................. 12

*Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006)................................................................... 13

*Shomo v. Dep't of Corr. & Cmty. Supervision,* 2022 U.S. Dist. LEXIS 81037,

   2022 WL 1406726, 11 (S.D.N.Y. May 4, 2022) ................................................................................. 8

*Shore v. Mirabilio*, 2018 U.S. Dist. LEXIS 53451, *23-24 (D. Conn Mar. 29, 2018) ............................... 18

*Sims v. City of New York*, 2018 U.S. Dist. LEXIS 212966, *7-8 (S.D.N.Y. Dec. 7, 2018)....................... 20

*Singletary v. Russo*, 377 F. Supp. 3d 175, 193 (E.D.N.Y. February 22, 2019) .......................................... 10

*Tieman v. City of Newburgh*, 2015 U.S. Dist. LEXIS 38703, *48 (S.D.N.Y. 2015) .................................. 14

*Whitfield v. O'Connell,* 402 F. App'x 563, 566 (2d Cir. 2010) ................................................................. 8

## Regulations

14 N.Y. PRAC., TORTS § 9:2) ................................................................................................................. 22

42 U.S.C. § 12131(1) ............................................................................................................................. 18

42 U.S.C. § 1983.............................................................................................................................ii, 2, 12, 16

Fed. R. Civ. P. 12(b)(6).......................................................................................................................... 1

27347761.1

## PRELIMINARY STATEMENT

This Memorandum of Law is submitted in support of the Motion to Dismiss the Second Amended Complaint of Michelle Freudenberg ("Plaintiff"), as Administratrix of the Estate of Eric Freudenberg ("Decedent"), by Defendants County of Orange ("Orange County"), Wellpath, LLC (f//k/a Correct Care Solutions Medical Services PC) and Wellpath NY, LLC (collectively, "Wellpath"), Orange County Sheriff Carl E. Dubois, Salwa Khouri, M.D. and Mandi Zaccagnino, N.P., pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

The Decedent passed away of lung cancer on July 3, 2021. During the years leading up to his death, he was incarcerated as a pre-trial detainee in the Orange County Correctional Facility ("OCCF"). While in custody, Decedent received regular medical attention, including care from outside specialists, in response to his complaints of pain, discomfort, and other symptoms. Plaintiff acknowledges that defendants were able to diagnose and treat Decedent's lung cancer during his OCCF incarceration, but alleges they should have done so sooner. Even accepting Plaintiff's allegations as true, for the reasons set forth herein, the Second Amended Complaint fails meet the high burden to state a claims under 42 U.S.C. 1983 for deliberate indifference, 42 U.S.C. *Monell* liability, 42 U.S.C. 1983 supervisory liability, American With Disabilities Act, the Rehabilitation Act, Wrongful Death, or *Respondeat Superior.* Accordingly, the Complaint must be dismissed in its entirety, with prejudice.

## RELEVANT FACTS AND PROCEDURAL HISTORY

Plaintiff commenced this action in New York State Supreme Court by filing a Summons and Complaint in the Orange County Clerk's Office on October 1, 2022. *See* Attorney Declaration of Paul A Sanders, Esq. ("Sanders Decl."), ¶ 3; CM/ECF Document ("Dkt.") No. 1. On February 1, 2023, Defendants removed the matter to the United States District Court for the Southern District of New York. *See* Sanders Decl. ¶4, Dkt. No. 1. On March 2, 2023, Plaintiff then filed a First Amended Complaint. *See* Sanders Decl. ¶ 5, Dkt. No. 6. On April 28, 2023, Plaintiff then filed the Second Amended Complaint. *See* Sanders Decl., ¶ 6. Dkt. No. 15. Following a pre-motion conference, this Court ordered that Defendants may move to dismiss the Second Amended Complaint no later than December 4, 2023. *See* Sanders Decl., Dkt. Nos. 43 and 57.

The Second Amended Complaint appears to assert the following federal claims:

- 42 U.S.C. § 1983 claims against Dr. Khouri, and NP Zaccagino (collectively, the "Individual Medical Defendants") for deliberate indifference (First Claim);

- 42 U.S.C. § 1983 supervisory liability against Wellpath and Orange County (collectively, the "Institutional Defendants") (Second Claim);

- 42 U.S.C. § 1983 *Monell* claims against Wellpath, Orange County, Sheriff Dubois, and Dr. Khouri (Third Claim);

- Americans with Civil Disabilities Act claim against Wellpath and Orange County (Fourth Claim); and

- Rehabilitation Act claims against Wellpath and Orange Count (Fifth Claim).

The Second Amended Complaint also asserts the following New York state law claims:

- Wrongful death claims against unspecified defendants (Sixth Claim); and

2

27347761.1

- *Respondeat superior* against the Wellpath, Orange County, Sheriff Dubois, and Dr. Khouri (Seventh Claim).

Setting aside conclusory and legal allegations, the Second Amended Complaint alleges the following facts which, for the purposes of the this motion only, are accepted as true:

- Plaintiff alleges that he entered the custody of the Orange County Correctional Facility ("OCCF"), as a pretrial detained, in December of 2018, where he remained until June 2021. *See* Second Amended Complaint, ¶ 114.

- The OCCF was operated by Sheriff Dubois. *See id.* at ¶ 21.

- Wellpath contracted with Orange County and/or Sheriff Dubois to provide medical care at the OCCF. *See id.* ¶ 31.

- Dr. Khouri was employed by Wellpath as the medical director for the OCCF. *Id.* at ¶¶ 75 – 77.

- NP Zaccagnino was employed by Wellpath as a member of the medical staff at the OCCF. *Id.* 82 – 85.

- Beginning in January of 2019 and continuing through 2020, Decedent made "multiple requests for medical attention consisting of "pain, bone pain, itchy skin, bloody noses, sore throat and he stated he was spitting up blood on a number of occasions." *Id.* at ¶ 115 – 120.

- On January 12, 2019, February 21, 2020, February 29, 2020, and September 20, 2020, Decedent reported "spitting up blood, coughing blood, and having blood in his nasal passage." *Id.* at 138.

- On January 8, 2020, Decedent was admitted a hospital for a "GI bleed" which was "determined to be an ulcer believed to have been caused by the prescription of

3

27347761.1

pain medication provided by medical staff at OCCF for an extended period of time." *Id.* at 125.

- Decedent received blood tests in 2020 through the time of his death, which revealed an "elevated sedimentation rate." *Id.* at 127.

- On May 27, 2020, Decedent reported extreme pain his "right shoulder area that extended into his chest and back." *Id.* at 129.

- On June 9, 2020, Decedent complained of pain in his upper back and shoulder area. *Id.* at 133.

- On July 24, 2020, a blood test revealed Decedent's "sedimentation rate continued to rise." *Id.* at 134.

- On August 8, 2020, Decedent consulted with Dr. Khouri, who diagnosed Decedent with hypothyroidism. *Id.* at 130.

- On February 22, 2021, Decedent's bloodwork "indicated his sedimentation rate was still high and revealed that his platelet level was now elevated." *Id.* at 139.

- On March 5, 2021, Decedent "documented symptoms of sharp pains in the left side of his chest near his heart." *Id.* at 140.

- In "late May or early June 2021," Decedent was hospitalized following complaints of severe neck pain. He was then discharged on or about June 4, 2021 with a diagnosis of "bilateral cervical, supraclavicular mediastinal & hilar lymphadenopathy due to probable poorly differentiated adenocarcinoma of lung origin (based on tissue results) along w[ith] severe pain." *Id.* at 141 -142.

- Plaintiff was admitted to "the hospital" on June 5, 2021 and diagnosed with "intractable pain and a malignant neoplasm metastatic to a lymph node of his neck." *Id.* at ¶ 8 and 143.

- Plaintiff died on July 3, 2021 of stage IV lung cancer. *See id.* at ¶9.

## ARGUMENT

### THE APPLICABLE LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 [2007]). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations omitted). In essence, unless a plaintiff's well-pleaded allegations have "nudged his claims across the line from conceivable to plausible, [her] complaint must be dismissed." *Id.* at 570.

On a motion to dismiss, the court must accept as true *only* those well-pleaded factual allegations set forth in the complaint, and must draw only all *reasonable* inferences in favor of the plaintiff. *Iqbal*, 556 U.S. at 677 (emphasis added). Thus, a court need not give "credence to plaintiff's conclusory allegations" or legal conclusions. *Cantor Fitzgerald v. Lutnick*, 313 F.3d 704, 709 (2d Cir. 2002 (internal quotations omitted); *see Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice").

In *Iqbal*, the Supreme Court outlined a two-step approach for deciding a motion to dismiss. First, the court should "identify[] pleadings that, because they are no more than [legal] conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. For example, "[t]hreadbare recitals of the elements of a cause of action supported by conclusory statements" are not factual and need not be considered. *Id.* at 678. Second, the court should only assume the veracity of those "well-pleaded factual allegations," and determine whether, together, they plausibly give rise to an entitlement of relief. *Id.* at 679.

For the reasons set forth herein, even accepted as true, the allegations in the Complaint do not meet the well-pleaded standard to survive this motion to dismiss.

## POINT II

### PLAINTIFF FAILS TO STATE A
### 42 U.S.C. 1983 DELIBERATE INDIFFERENCE CLAIM
### AGAINST THE INDIVIDUAL MEDICAL DEFENDANTS

With respect to Individual Medical Defendants (the Institutional Defendants are addressed in Point III), a constitutional claim by a pre-trial detainee arising out of inadequate medical treatment requires that the plaintiff state: "(1) that [Decedent] had a serious medical need . . . and (2) that the [individual defendant] acted with deliberate indifference to such needs. *Charles v. Orange Cty.*, 925 F.3d 73, 86 (2d Cir. 2019) (citing *Estelle v. Gamble*, 429 U.S. 97, 105 [1976] and *Darnell v. Pineiro*, 849 F.3d 17, 29 [2d Cir. 2017]). Moreover, deliberate indifference must be supported by allegations establishing that individual defendant possessed the requisite mental state, *i.e.* "recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, *or should have known*, that the condition posed an excessive risk to [the plaintiff's] health or safety.'" *Charles* 925 F.3d at 87.

6

"Errors in professional judgment do not rise to a level of deliberate indifference necessary to recover under a § 1983 action. *Bowman v. Campbell*, 850 F. Supp. 144, 147 (N.D.N.Y. April 29, 1994) (citing *Gill v. Mooney*, 824 F.2d 192 [2d Cir. 1987]). Likewise, "certain kinds of medical misconduct -- specifically, the 'inadvertent failure to provide adequate medical care' and 'negligence in diagnosing or treating a medical condition,' . . . did not rise to the level of deliberate indifference." *Hathaway v. Coughlin,* 99 F.3d 550, 554 (2d Cir. 1996) (quoting *Estelle,* 429 U.S. at 105-106.

Here, Plaintiff fails to allege facts supportive of a constitutional deprivation on the part of any of the Individual Medical Defendants.  In attempting to state the deliberate indifference claim against them, Plaintiff offers three factual allegations regarding the conduct of the two Individual Medical Defendants (Khouri and Zaccagnino), often lumped together without differentiating their conduct:

- That the Individual Medical Defendants had "had access to and reviewed the records," which included Decedent's June 9, 2020 request for medical attention premised upon "complaints of feeling like he had '…continuously pulled muscles in my upper back, shoulder area." Second Amended Complaint, ¶ 133.  Plaintiff further alleges that these were "medical symptoms clearly indicating progressing cancer." *Id.*

- That on August 8, 2020, Decedent consulted with Dr. Khouri, who "misdiagnosed the symptoms of his cancer and over prescription of pain pills (including his being tired and weight gain) to hypothyroidism.  The records were reviewed and submitted by [NP] Zaccagino." *Id.*  at ¶131.

7

- That the Individual Medical Defendants failed to schedule a fine needle biopsy in August of 2020, as recommended following Decedent's consultation with an outside endocrinologist. *Id.* at ¶¶ 135-136.

"[T]he crux of Plaintiff's claim is ultimately that the Defendants misdiagnosed [Decedent's] symptoms and failed to provide a [diagnostic] test to detect . . . cancer sooner—but these allegations fail to provide a basis of an Eighth Amendment violation." *Grubbs v. Ngbodi*, 2022 U.S. Dist. LEXIS 159155, 21 (S.D.N.Y. September 2, 2022) (internal citations omitted). Plaintiff does not offer factual allegations establishing that the Individual Medical Defendants "knew of, and disregarded an excessive risk to, [Plaintiff's] health and safety" when selecting the course of treatment. *Arnold v. Westchester County Corr. Facility*, 2011 U.S. Dist. LEXIS 88149, 13 (S.D.N.Y. July 11, 2018).

Rather, by Plaintiff's own admissions, Decedent was repeatedly seen by medical providers (including an outside endocrinologist) in response to his complaints, but Dr. Khouri "misdiagnosed" his condition, which does not amount to a constitutional violation. *See Whitfield v. O'Connell,* 402 F. App'x 563, 566 (2d Cir. 2010) (holding, "even assuming that . . . reports suggested that he might be suffering from a urinary tract infection, any failure . . . to properly diagnose this condition would not constitute deliberate indifference, but rather, at worst, medical malpractice*."); Shomo v. Dep't of Corr. & Cmty. Supervision,* 2022 U.S. Dist. LEXIS 81037, 2022 WL 1406726, 11 (S.D.N.Y. May 4, 2022) (finding that "[m]isdiagnosing a condition is not the same as being deliberately indifferent to it"); *Haynes v. City of New York*, 2020 U.S. Dist. LEXIS 151193, 2020 WL 4926178, 11 (S.D.N.Y. Aug. 20, 2020) (noting "allegations of negligent misdiagnosis . . . do not suggest that the defendant acted with a conscious disregard to inmate health or safety."); *Lainez v. Roycroft*, 2019 U.S. Dist. LEXIS 173797, 3 (S.D.N.Y. Oct. 7, 2019)

8

(dismissing deliberate indifference claims because "plaintiff's complaints lack any allegation that his misdiagnosis was caused by anything other than . . . negligence.")

Specifically, with regard to Plaintiff's allegation that "the fine needle biopsy was never scheduled" by the Individual Medical Defendants (Plaintiff impermissibly refers to both of them collectively without itemizing separate conduct), Plaintiff fails to allege facts demonstrating that either of them "knew of but disregarded [Decedent's] serious medical need" by ignoring the endocrinologist's purported recommendation. *Harrison,* 219 F.3d at 137. The factual allegations of the Second Amended Complaint do not establish that either of the Individual Medical Defendants even knew about the endocrinologist's purported recommendation. Instead, the Second Amended Complaint simply states the endocrinologist "made specific reference that these additional symptoms may be the result of cancer and recommended a fine needle biopsy to which [Decedent] agreed." Second Amended Complaint, ¶135. The Second Amended Complaint does not, however, allege that the endocrinologist spoke with either of the Individual Medical Defendants or provided documentation or correspondence to them regarding his recommendation, making them so aware.

Even assuming *arguendo* that either of the Individual Medical Defendants were notified of the endocrinologists' recommendation of a fine needle biopsy, the Second Amended Complaint is again silent as to whether they were ultimately the individuals responsible for performing the administrative function of scheduling the biopsy. Regardless, absent allegations establishing conscious disregard for Decedent's serious medical needs in scheduling the biopsy or that Decedent specifically communicated to the named Individual Medical Defendants regarding the delay in the scheduling, the failure to schedule or to "follow up with those responsible for scheduling appointments" is insufficient to support a deliberate indifference claim. *See Raynor v.*

*Feder,* 2023 U.S. Dist. LEXIS 172579, *19 (Dist. Conn. Sept. 27, 2023) ; *see also See Singletary v. Russo,* 377 F. Supp. 3d 175, 193 (E.D.N.Y. February 22, 2019) (granting summary judgment despite defendant's failure to follow up with scheduling of specialist appointment because "there is no indication in the record that [defendant] was aware that the appointment with [the specialist] had not been scheduled promptly").  Furthermore, while Plaintiff alleges that Decedent made "follow up requests that the biopsy be scheduled," there are no allegations that such requests were brought to the attention of either of the Individual Medical Defendants, *i.e.* that they were placed on "actual or constructive notice of the immediate medical needs" of Plaintiff, as necessary to for them to have been deliberately indifferent.  *Singletary,* 377 F.Supp.3d at 193.

Finally, even if either of the Individual Medical Defendants was aware of the endocrinologists' recommendation *and* was responsible for scheduling in any capacity, there are no allegations that the purported failure to schedule the biopsy was based upon the Individual Medical Defendants' malice, as opposed scheduling conflicts, or a difference in the medical opinions and conclusions of the Individual Medical Defendants as compared to the endocrinologist.  *See Gonzalez v. McGue*, 2001 U.S. Dist. LEXIS 37, *7 (S.D.N.Y. Jan. 4, 2001) (holding that the "Doctor's ultimate failure to perform a biopsy, based upon his conclusion that basal cell carcinoma was not the cause of plaintiff's skin condition, does not constitute deliberate indifference to any serious medical condition").

Simply put, the Second Amended Complaint merely alleges that an endocrinologist recommended a biopsy and one was never scheduled.  There are no allegations establishing that the *personal* deliberate indifference of either of the Individual Medical Defendants was the reason.

The instant matter is on point with *Grubbs*, where the inmate plaintiff argued that his corrections care treatment providers were deliberately indifferent in failing to timely diagnose and treat his prostate cancer where, as is similar to the allegations here, "(1) the Defendants had access to Plaintiff's medical records and overlooked the fact that he had been on Flomax since 2013, yet his conditions worsened during the time he was at Fishkill; (2) Plaintiff was in a demographic group susceptible to prostate cancer and already presented a slightly elevated PSA score as of April 2013 (which Defendants should have gathered from his medical chart), and therefore Plaintiff should have received testing for prostate cancer at an earlier point; (3) and that Defendants failed to timely order prostate testing or provide a physician or specialist referral in over 20 separate sick calls between August 2018 and July 2020."  2022 U.S. Dist. LEXIS 159155, at 17-18.  This Court found that "[w]hile the factual allegations likely entered the realm of medical negligence, it does not rise to the level of culpability required for a deliberate indifference claim." *Id.* at 20-21.  The same result is compelled here.

To the extent any remaining allegations of the Second Amended Complaint may be construed as supportive of a deliberate indifference claim (they are not), they do not assert the Individual Medical Defendants' "personal involvement," i.e. "direct participation, or failure to remedy the alleged wrong after learning of it, or creation of a policy or custom under which unconstitutional practices occurred, or gross negligence in managing subordinates." *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996).  As such, the Second Amended Complaint fails to state a claim for deliberate indifference against the Individual Medical Defendants.  *See Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (noting "it is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983"); *Delee v. Hannigan*, 729 Fed. Appx. 25* 31, (2d Cir. 2018) (citing *Farrell*

11

*v. Burke*, 449 F.3d 470 [2d Cir. 2006]) (holding, where the "complaint makes no allegation as to the involvement of [individual defendants], other than the titles of their employment … [t]here is therefore no well-pled allegation against any of these . . .  individuals").

In light of the above, Plaintiff's First Cause of Action for deliberate indifference against the Individual Medical Defendants must be dismissed.

**POINT III**

**PLAINTIFF FAILS TO STATE A
42 U.S.C. § 1983 *MONELL* CLAIM AGAINST
THE INSTITUTIONAL DEFENDANTS**

Municipalities, such as Orange County, and private entities acting on their behalf, such as Wellpath, are not vicariously liable for the constitutional torts of their employees unless "the government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the [plaintiff's injury]."  *Monell v. Department of Soc. Servs.*, 436 U.S. 658, 694 (1978); *Rojas v. Alexander's Dept. Store, Inc.*, 924 F.2d 406, 408 (2d Cir. 1990) ("Private employers are not liable under § 1983 for the constitutional torts of their employees . . . unless the plaintiff proves that action pursuant to official . . . policy of some nature caused a constitutional tort.").

To plead a *Monell* claim under §1983, a plaintiff is required to allege: "(1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008) (citing *Monell v. Dep't of Soc. Servs*, 436 U.S. 658, 690-691 (1977).

Preliminarily, as set forth in Point II, Plaintiff does not allege an underlying depravation of Decedent's constitutional rights that could support a *Monell* claim in the first instance. *See Segal*

12

*v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) (finding that absent an underlying constitutional violation, the Court need not address municipal liability). Regardless, the Second Amended Complaint does not satisfy *Monell*, and the exact type of allegations at issue are routinely dismissed in this Court.

To establish an official policy or custom as required by *Monell*, Plaintiff must allege one of the following: "(1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees." *Brandon v. City of New York*, 705 F. Supp. 2d 261, 276-77 (S.D.N.Y. 2010)  Conclusory allegations of municipal customs and practices are insufficient to assert a *Monell* claim. *McClean v. County of Westchester*, 2018 U.S. Dist. LEXIS 204269, *61 (S.D.N.Y. Dec. 3, 2018).

Here, Plaintiff's Second Amended Complaint does not allege the existence of a formal policy, but instead, asserts vague and conclusory allegations of undefined "policies, practices and customs" involving generalized "inappropriate or inadequate" medical treatment, which Plaintiff claims were "so persistent and widespread that it constituted an official policy or custom." Second Amended Complaint, ¶¶171-177. A *Monell* claim brought on this basis must contain factual allegations establishing that such policies or practices were "so consistent and widespread that it constitutes custom or usage." *Brandon*, F. Supp 2d. at 276-277. However, an "inmate cannot plausibly state a widespread practice simply by alleging his own experience and then extrapolating

to the entire jail population." *Kirton v. Doe*, 2023 U.S. Dist. LEXIS 47874, *29 (S.D.N.Y. 2023) (internal citations omitted).

Here, aside from Decedent's own individual experience, Plaintiff offers nothing more than a broad array of dissimilar incident in disparate jails across the country, based upon unverified and unsubstantiated complaints and lawsuits referenced in news articles regarding Wellpath generally. *See* Second Amended Complaint, ¶¶97-113.

Similarly, in *Tieman v. City of Newburgh*, 2015 U.S. Dist. LEXIS 38703, *48 (S.D.N.Y. 2015), this Court held that prior lawsuits, particularly without findings or admissions of liability, "are insufficient to plausibly support an inference of a widespread custom." Here, Plaintiff refers to a "complaint made on February 17, 2022 by Catholic Charities Community Services – Archdiocese of New York," the matter of "*Melvin v. County of* Westchester, 7:14-CV-02995," which Plaintiff admits "settled for an undisclosed amount," and vague references to "hundreds of cases" and general allegations contained in news reports. Second Amended Complaint, ¶¶111-113.

Plaintiff does not allege that there were any findings or admissions of liability on the part of the Institutional Defendants in any of these lawsuits, let alone any lawsuits that involved issues factually similar to the challenged treatment provided to Decedent, or cancer diagnosis/treatment in general.

The insufficiency of Plaintiff's Second Amended Complaint mirrors the shortfalls of the pleading in *Iacovangelo v. Corr. Med. Care, Inc.*, which attempted to establish the "official policy" element in connection with drug withdrawal treatment by "alleging "that CMC has, for years, provided contract medical care at jails in counties 'across New York,' including Albany, Broome, Rensselaer, Schenectady, Tioga and Ulster" and "[a]ccording to the hearsay newspaper article

14

27347761.1

attached to the Amended Complaint as Exhibit C, between 2009 and 2011 there were a total of nine inmate deaths at jails where CMC provided medical care.  Using brief quotes taken out of context, the newspaper article suggests that CMC provided sub-standard care in all nine instances where inmates died."  2014 U.S. Dist. LEXIS 140679, 50 (W.D.N.Y. October 2, 2014), *aff'd* in part, vacated in part, remanded, 624 F. Appx. 10 (2d Cir. 2015).  The Second Circuit agreed with the District Court's dismissal of the *Monell* claims, finding that such allegations were insufficient to establish an official policy:

> First, no formal policy to provide inadequate medically supervised withdrawal has been pleaded outside of entirely conclusory allegations. Second, "a sufficiently widespread practice among [Correctional Medical Care employees] to support reasonably the conclusion that [insufficient medically supervised withdrawal] was the custom . . . and that supervisory personnel must have been aware of it" has not been shown. Here, although Correctional Medical Care appears to have a troubled track record in many respects, the plaintiff has not pleaded a custom of not providing adequate medical supervision for inmates going through drug or alcohol withdrawal. Indeed, other than the plaintiff, the amended complaint provides only one additional example of a similar incident. Third, "a showing of deliberate indifference on the part of supervisory personnel" to inadequate medically supervised withdrawal has not been plausibly pleaded, as nothing in the complaint plausibly alleges knowledge of this matter on the part of any supervisory personnel.

*Iacovangelo*, 624 Fed. Appx. at 13-14.  (internal citations omitted).

Here, as in *Iacovangelo*, the Second Amended Complaint, refers to hearsay reports which merely establish that there are allegations (not findings or admissions) of prior incidents involving medical treatment provided by Wellpath generally, not that there is a specific policy, practice, or custom of providing inadequate care to inmates, such as Decedent, factually related to addressing symptoms of cancer.  None of the "official policy" elements have been plausibly alleged.

Plaintiff's *Monell* claims against the Orange County and Wellpath, therefore, must be dismissed.

## POINT IV

### PLAINTIFF FAILS TO STATE A
### 42 U.S.C. § 1983 *MONELL* CLAIM AGAINST
### THE INDIVIDUAL MEDICAL DEFENDANTS AND SHERIFF DUBOIS

A *Monell* claim may not be asserted against an individual defendant "because *Monell* municipal liability does not extend to individuals." *Fate v. Petranker,* 2020 U.S. Dist. LEXIS 1119103, *16 (S.D.N.Y. July 6, 2020). Likewise, the "Sheriff is not a municipal corporation and thus is not within the scope of *Monell* but is suable only for personal involvement." *Camacho v. City of Buffalo*, 2021 U.S. Dist. LEXIS 198496, *17 (W.D.N.Y October 14, 2021). "The bare fact that [a defendant] occupies a high position in the . . . prison hierarchy is insufficient to sustain [a] claim." *Colon*, 58 F.3d at 874.

Accordingly, Plaintiff's third claim as against Dr. Khouri, NP Zaccagnino, and Sheriff DuBois must be dismissed.

## POINT V

### PLAINTIFF FAILS TO STATE A
### 42 U.S.C. § 1983 SUPERVISORY LIABILITY CLAIM

The liability of a municipality by virtue of the conduct of its supervisory officers is addressed in the context of *Monell*, not a separate cause of action for "supervisory liability," which involves the liability of supervisory officers based upon their own individual misconduct. *See Ashcroft v. Iqbal,* 556 U.S. 662, 677, (2009) (explaining that in "a § 1983 suit . . . — where masters do not answer for the torts of their servants — the term 'supervisory liability' is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct"). Specifically, where a claim characterized as "supervisory liability" pertains to a municipality's alleged failure to train, supervise, or discipline its employees for conduct relating to the alleged constitutional deprivation, the "claims against the [municipality]

16

are subsumed in their *Monell* claims," rendering any claimed "supervisory liability" against the municipality "duplicative." *Colon v. City of Rochester*, 419 F. Supp.3d 586, 609 (W.D.N.Y. 2019).

Here, Plaintiff attempts to plead a separate claim against the Institutional Defendants for their alleged failure to "properly supervise and train the medical staff regarding the negligent medical treatment provided to [Decedent]." Second Amended Complaint, ¶167.   Such a claim is duplicative of Plaintiff's *Monell* claim.

Furthermore, a "necessary factor . . . of this supervisory liability is that a constitutional violation have occurred." *Alston v. Bendheim*, 672 F.Supp.2d 378, 388 (S.D.N.Y. Nov. 23, 2009) (citing *Hernandez v. Keane*, 341 F.3d 137, 145 [2d Cir. 2003]).   Alleged negligence does not amount to a constitutional violation. *See id.* (citing *Estelle,* 429 U.S. at 106).   As set forth above in Points II and III, Plaintiff fails to sufficiently allege a constitutional violation.   Rather, Plaintiff alleges nothing more than negligence, in regards to both the medical treatment provided to Decedent and in the Institutional Defendants' supervision and training of those responsible for that treatment.

Accordingly, Plaintiff's Second Claim for "supervisory liability" under 42 U.S.C. 1983 must be dismissed.

## POINT VI

### PLAINTIFF FAILS TO STATE AN AMERICANS WITH DISABILITY ACT CLAIM OR REHABILITATION ACT CLAIMS

Causes of action under the Americans with Disability Act ("ADA") and Rehabilitation Act ("RA") impose identical requirements and are properly analyzed together. *See Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003).   To state a claim under Title II of the ADA, a prisoner must show: "(1) he or she is a 'qualified individual with a disability'; (2) he or she is being

17

excluded from participation in, or being denied the benefits of some service, program, or activity by reason of his or her disability; and (3) the entity [that] provides the service, program, or activity is a public entity." *Clarkson v. Coughlin*, 898 F. Supp. 1019, 1037 (S.D.N.Y. June 16, 1995) (internal citations omitted). Likewise, to state a claim under Section 504 of the RA, "a prisoner must establish that: (1) he is a 'qualified individual with a disability;' (2) he is 'otherwise qualified' to participate in the offered activity or program or to enjoy the services or benefits offered; (3) he is being excluded from participation or enjoyment solely by reason of his disability; and (4) the entity denying the inmate participation or enjoyment receives federal financial assistance." *Hallett v. New York State Dep't of Corr. Servs.*, 109 F. Supp. 2d 190, 198 (S.D.N.Y. August 14, 2000). A "claim that challenges the adequacy or the substance of services that are being provided to a disabled individual is a not a valid claim under either the ADA or the Rehabilitation Act." *Maccharulo v. New York State Dep't of Corr. Servs.*, 2010 U.S. Dist. LEXIS 73312, *3 (S.D.N.Y. July 21, 2010).

### A. Neither Wellpath, Sheriff DuBois, nor the Individual Medical Defendants are Proper ADA/RA Defendants

"An entity is covered under Title II of the ADA, if it is a public entity," which is defined as "(A) any State or local government; (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government; and (C) the National Railroad Passenger Corporation, and any commuter authority." *Shore v. Mirabilio*, 2018 U.S. Dist. LEXIS 53451, *23-24 (D. Conn Mar. 29, 2018) (*citing* 42 U.S.C. § 12131(1)). "A private entity 'does not become a 'public entity' under Title II merely by contracting with a government entity to provide governmental services.'" *Shore*, 2018 U.S. Dist. LEXIS 53451, at *24 (*quoting Cox v. Jackson*, 579 F. Supp. 2d 831, 852 (E.D. Mich. 2008) (finding that medical provider at corrections facility was not an instrumentality of the state)); *see Green v. City of New York*, 465 F.3d 65, 78-79 (2d

18

Cir. 2006) (holding that a private hospital was not a public entity for purposes of Title II even where it "carrie[d] out a public function pursuant to a contract with the City, in accord with City rules, and under the direction of City employees").

In *Green*, the Second Circuit found that "instrumentality," as used in Title II of the ADA, refers to "an entity [that] belong[s] to the government or [was] created by it." 465 F.3d at 79. The Court reasoned that "instrumentality" is included in a string of terms that "are qualified by 'of a State or States or local government.'" *Id*. Thus, an entity must be "a creature of a state or municipality" in order to be deemed a "public entity" within the meaning of the ADA. *Id*. As the subject private hospital only contracted with the City to provide services, despite doing so under the City's rules and direction, that hospital was not a "public entity" under the ADA. *Id*.

As Plaintiff correctly acknowledges, Wellpath is a medical provider for the OCCF not a "public entity." As such, Wellpath is not a permissible defendant under any cause of action premised under the ADA or RA.

Moreover, claims under the ADA and RA may not be brought against individuals. *See Hallett*, 109 F. Supp. 2d at 199. Accordingly, Plaintiff's fourth and fifth causes of must be dismissed as against Sheriff Dubois, Dr. Khouri, and NP Zaccagnino on that basis.

**B. Plaintiff Fails to Sufficiently Allege Disparate Treatment**

While unlike the aforesaid defendants, Orange County is a "public entity," Plaintiff's ADA and RA claims still fail on the basis that Plaintiff fails to sufficiently allege disparate treatment. Plaintiff claims that "Defendants failed to accommodate [Decedent] by failing to provide health services to him, and instead, (a) ignored his pleads for medical attention, (b) thinking that he did not know what was going on in his body because of his disability, (c) using excessive and improper drugs rather than treatment, (d) wrongly determining that because of his disability he required anti-

19

27347761.1

anxiety medication, and (e) inappropriately drugging him into a sleepy stupor." Second Amended Complaint, ¶187.[1]  Other than the additional conclusory allegation that the treatment decisions were made "because of his disability," Plaintiff offers nothing more in support of the ADA and RA claims beyond the facts which pertain to, at most, inadequate medical care or medical malpractice.

Put differently, "although Plaintiff alleges that he was 'excluded from participation in or was denied the benefits of the services, programs, or activities of a public entity' . . . he alleges no facts indicating that he was treated differently because of his disability." *Sims v. City of New York*, 2018 U.S. Dist. LEXIS 212966, *7-8 (S.D.N.Y. Dec. 7, 2018).  The fact that Decedent was disabled and received what Plaintiff alleges was inadequate medical treatment does not amount to an ADA or RA claim. *See id.; see also, Jones v. Ng*, 2015 U.S. Dist. LEXIS 27105 (S.D.N.Y. March 5, 2015) (finding that failure to allege facts to support ADA and RA claims beyond those alleged in support of deliberate indifference claim warrants dismissal); *Hardy v. Diaz*, U.S. Dist. LEXIS 39295 (N.D.N.Y. March 30, 2010) (finding where the factual allegations are merely "challenging the medical treatment of [the inmate's] medical condition . . . he cannot proceed under either the ADA or the RA.").

Accordingly, Plaintiff's fourth and fifth claims under the ADA and RA must be dismissed as against all Defendants.

---

[1] The Second Amended Complaint also contains allegations that the Institutional Defendants "failed to take appropriate steps to "ensure that communications with the members of the jail population with disabilities are as effective as communications with others . . . furnish appropriate aids and services where necessary . . . and give primary consideration to the requests of the individual with a disability…" generally.  Second Amended Complaint, ¶ 188.  None of these alleged "failures" are specifically alleged in the context of Decedent's medical treatment.

## POINT VII

## PLAINTIFF FAILS TO STATE A CLAIM FOR WRONGFUL DEATH

"Under New York law, the elements of a cause of action for wrongful death are: (1) the death of a human being, (2) the wrongful act, neglect or default of the defendant by which the decedent's death was caused, (3) the survival of distributees who suffered pecuniary loss by reason of the death of decedent, and (4) the appointment of a personal representative of the decedent." *Melvin v. Cnty. Of Westchester*, 2016 U.S. Dist. LEXIS 41120, *76 (March 29, 2016). "New York law 'has steadfastly restricted recovery to 'pecuniary injuries,' or injuries measurable by money, and denied recovery for grief, loss of society, affection, conjugal fellowship[,] and consortium.'" *Id.* (quoting *Gonzalez v. N.Y.C. Hous. Auth.*, 77 N.Y.2d 663, 572 N.E.2d 598, 600-01, [N.Y. 1991]). The "loss of Decedent's 'comfort and the enjoyment of his society,' therefore, is not recoverable." *Id.*

Here, Plaintiff does not allege that Decedent's distributees actually suffered pecuniary loss by reason of Decedent's death. To the contrary, Plaintiff alleges that *Decedent*, not his distributes, "was damaged in an amount which exceed the jurisdictional limitation of all lower courts which would otherwise have jurisdiction over this action." Second Amended Complaint, ¶ 199. Plaintiff, therefore, has failed to state a claim for wrongful death.

## POINT VIII

## PLAINTIFF FAILS TO STATE A CLAIM FOR *RESPONDEAT SUPERIOR*

It is well established that "[t]here is no *respondeat superior* liability under § 1983." *Jemmott v. Coughlin*, 85 F.3d 61, 67 (2d Cir. 1996); *see also, Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986); *see also Genovese v. Town of Southampton*, 921 F. Supp. 2d 8, 24 (E.D.N.Y. Feb. 1, 2013) ("[A] municipal entity may only be held liable where the entity itself commits a

wrong; a municipality cannot be held liable under § 1983 on a *respondeat superior* theory.") (internal quotation omitted).

Likewise, New York law does not recognize an independent cause of action for *respondeat superior* or vicarious liability. *See Broderick v. Research Found. Of State Univ. of New York*, 2010 U.S. Dist. LEXIS 82031, *3 (E.D.N.Y. Aug. 11, 2010) (explaining, "vicarious liability is not an independent cause of action, under either federal or state law. It is merely a doctrine that enables, in certain circumstances, "a defendant who played no part in the occurrence causing the plaintiff's injury [to] be held legally responsible for the plaintiff's injury caused by the tort of another person") (citing 14 N.Y. PRAC., TORTS § 9:2).

Accordingly, Plaintiff's seventh claim for *respondeat superior* must be dismissed.

## <u>CONCLUSION</u>

In light of the foregoing, Defendants' respectfully request that the Court grant Defendants' motion to dismiss Plaintiff's Second Amended Complaint in its entirety, with prejudice, and for such other and further relief the shall deem just and proper.

**DATED:**      December 4, 2023          **BARCLAY DAMON LLP**

By:     /s/ *Paul A. Sanders*
      Paul A. Sanders, Esq.
*Attorneys for County of Orange, Wellpath, LLC (f//k/a Correct Care Solutions Medical Services PC), Wellpath NY, LLC, Orange County Sheriff Carl E. Dubois, Salwa Khouri, M.D. and Mandi Zaccagnino, N.P..*
2000 Five Star Bank Plaza
100 Chestnut Street
Rochester, New York 14604
Telephone:   (585) 295-4426
Email:  psanders@barclaydamon.co

27347761.1