UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

**MICHELLE FREUDENBERG, as Administratrix of the Estate of ERIC FREUDENBERG,**

                        *Plaintiff*,

    *-vs-*

**COUNTY OF ORANGE, H.I.G. CAPITAL, LLC, WELLPATH, LLC (formerly known as CORRECT CARE SOLUTIONS MEDICAL SERVICES PC), WELLPATH NY, LLC, ORANGE COUNTY SHERIFF CARL E. DUBOIS in his official capacity, ORANGE COUNTY DEPUTY JOHN DOE 1 in their official and individual capacities, SALWA KHOURI, M.D. in her official and individual capacities, MANDI ZACCAGNINO, N.P. in her official and individual capacities, JOHN DOE 2-10, in their official and individual capacities,**

                        *Defendants*.

Civil No.:  7:23-cv-00847-KMK

_____

### REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' PRE-ANSWER MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6)

**BARCLAY DAMON LLP**
*Attorneys for Defendants*
*County of Orange, Wellpath, LLC (f//k/a Correct Care Solutions Medical Services PC), Wellpath NY, LLC, Orange County Sheriff Carl E. Dubois, Salwa Khouri, M.D. and Mandi Zaccagnino, N.P.*
Office and Post Office Address
100 Chestnut Street, Suite 2000
Rochester, New York 14604
Telephone (585) 295-4426
Email: psanders@barclaydamon.com

**PAUL A. SANDERS, ESQ**
**DAVID M. FULVIO, ESQ.**
    *of Counsel*

i

27670217.1

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................... iii

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ............................................................................................................................. 2

    POINT I:  PLAINTIFF FAILS TO STATE A 42 U.S.C. 1983 DELIBERATE INDIFFERENCE CLAIM AGAINST THE INDIVIDUAL MEDICAL DEFENDANTS ............................................................................................... 2

    POINT II: PLAINTIFF FAILS TO STATE A 42 U.S.C. § 1983 MONELL CLAIM AGAINST THE INSTITUTIONAL DEFENDANTS ........................ 2

    POINT III: PLAINTIFF FAILS TO STATE AN AMERICANS WITH DISABILITY ACT CLAIM OR REHABILITATION ACT CLAIMS .......................... 7

        A. Neither Wellpath, Sheriff DuBois, nor the Individual Medical Defendants are Proper ADA/RA Defendants. ...................................... 7

        B. Plaintiff Fails to Sufficiently Allege Disparate Treatment. ................. 9

    POINT IV: PLAINTIFF FAILS TO STATE A CLAIM FOR WRONGFUL DEATH ................................................................................................................ 10

CONCLUSION ........................................................................................................................ 11

27670217.1

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Arnold v. Westchester County Corr. Facility*,
   2011 U.S. Dist. LEXIS 88149 (S.D.N.Y. July 11, 2018) ........................................................ 3

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................................... 2

*Carter v. Broome Cnty.*,
   394 F. Supp.3d 228 (N.D.N.Y. Aug. 21, 2019) ..................................................................... 5

*Eisenberg v. County of Westchester*,
   No. 21-CV-4507 (VB), 2022 U.S. Dist. LEXIS 45021 (S.D.N.Y. Mar. 14, 2022) ................. 6

*Garcia v. State Univ. of N.Y. Health Scis. Ctr.*,
   280 F.3d 98 (2d Cir. 2001) ..................................................................................................... 8

*GMAC Mortg. Corp. v. Weisman*,
   1997 U.S. Dist. LEXIS 2042, *10 (S.D.N.Y. 1997) ............................................................... 2

*Gonzalez v. McGue*,
   2001 U.S. Dist. LEXIS 37 (S.D.N.Y. Jan. 4, 2001) ............................................................... 3

*Grubbs v. Ngbodi*,
   2022 U.S. Dist. LEXIS 159155 (S.D.N.Y. September 2, 2022) ............................................ 3

*Hallett v. New York State Dep't of Corr. Servs.*,
   109 F. Supp. 2d 190 (S.D.N.Y. August 14, 2000) ................................................................. 8

*Hardy v. Diaz*,
   U.S. Dist. LEXIS 39295 (N.D.N.Y. March 30, 2010) .......................................................... 9

*Hathaway v. Coughlin*,
   99 F.3d 550 (2d Cir. 1996) ..................................................................................................... 3

*Helijas v. Corr. Med. Care, Inc.*,
   2016 U.S. Dist. LEXIS 130958 (N.D.N.Y. Sept. 26, 2016) ................................................... 6

*Iacovangelo v. Corr. Med. Care, Inc.*
   2014 U.S. Dist. LEXIS 140679 (W.D.N.Y. October 2, 2014), *aff'd* in part, vacated in
   part, remanded, 624 F. Appx. 10 (2d Cir. 2015) ................................................................... 5

*Jones v. Ng*,
   2015 U.S. Dist. LEXIS 27105 (S.D.N.Y. March 5, 2015) ..................................................... 9

*Kucharczyk v. Westchester Cnty.*,
   95 F. Supp.3d 529 (S.D.N.Y. March 26, 2015) ................................................................ 5, 6

*Lipton v. Cty. of Orange*,
   315 F. Supp. 2d 434 (S.D.N.Y. April 14, 2004) .................................................................................. 10

*McNulty v. Yaneka, et al.*,
   2013 U.S. Dist. LEXIS 25525 (S.D.N.Y. Feb. 25, 2013) ..................................................................... 6

*Meisel v. Westchester County*,
   No. 18-cv-7202 (CS), 2020 U.S. Dist. LEXIS 111581 (S.D.N.Y. June 25, 2020) ............................... 6

*Melvin v. County of Westchester*,
   No. 14-cv-2995 (KMK), 2016 U.S. Dist. LEXIS 41120 (S.D.N.Y. Mar. 29, 2016) ............................ 6

*Nolley v. County of Erie*,
   776 F. Supp. 715 (W.D.N.Y. Oct. 31, 1991) ........................................................................................ 8

*Rodriguez v. Bipin*,
   2023 U.S. Dist. LEXIS 55300 (N.D.N.Y. March 30, 2023) ................................................................. 4

*Schweitzer v. Crofton*,
   2010 U.S. Dist. LEXIS 90656 (E.D.N.Y. Sept. 1, 2010) .................................................................... 10

*Segal v. City of New York*,
   459 F.3d 207 (2d Cir. 2006) ................................................................................................................. 4

*Shore v. Mirabilio*,
   2018 U.S. Dist. LEXIS 53451 (D. Conn Mar. 29, 2018) ..................................................................... 8

*Sims v. City of New York*,
   2018 U.S. Dist. LEXIS 212966 (S.D.N.Y. Dec. 7, 2018) .................................................................... 9

*Tieman v. City of Newburgh*,
   2015 U.S. Dist. LEXIS 38703 (S.D.N.Y. 2015) ................................................................................... 5

**Statutes**

42 U.S.C. 1983 .......................................................................................................................................... 6, 1

42 U.S.C. § 1983 .......................................................................................................................................... 4

Americans with Disability Act ........................................................................................................... 6, 7, 8, 9

Rehabilitation Act ............................................................................................................................... 7, 8, 9

**Other Authorities**

Eighth Amendment ..................................................................................................................................... 4

Fed. R. Civ. P. 12(b)(6) ......................................................................................................................... 6, 10

iv

27670217.1

**PRELIMINARY STATEMENT**

This Reply Memorandum of Law is submitted in further support of the Motion to Dismiss the Second Amended Complaint ("SAC") of Michelle Freudenberg ("Plaintiff"), as Administratrix of the Estate of Eric Freudenberg ("Decedent"), by Defendants County of Orange ("Orange County"), Wellpath, LLC (f//k/a Correct Care Solutions Medical Services PC) and Wellpath NY, LLC (collectively, "Wellpath"), Orange County Sheriff Carl E. Dubois, Salwa Khouri, M.D. and Mandi Zaccagnino, N.P., pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

Defendants have established that Plaintiff's SAC fails to state causes of action under 42 U.S.C. 1983 for deliberate indifference, 42 U.S.C. 1983 *Monell* liability, 42 U.S.C. 1983 supervisory liability, American With Disabilities Act, the Rehabilitation Act, Wrongful Death, or *Respondeat Superior*. In opposition, Plaintiff concedes that the following causes of action are properly dismissed: (1) 42 U.S.C. 1983 *Monell* liability as against the Individual Defendants, (2) 42 U.S.C. 1983 supervisory liability claim, and (3) *respondeat superior*. *See* Dkt. No. 64 (Plaintiff's MOL), pp. 16-17, and 23.

With regards to the remaining causes of action, Plaintiff points to nothing more than the insufficient conclusory allegations contained in the SAC, not factual allegations which, if true, would establish the elements of each claim. Accordingly, the Complaint must be dismissed in its entirety, with prejudice.

**ARGUMENT**

**POINT I**

**PLAINTIFF FAILS TO STATE A
42 U.S.C. 1983 DELIBERATE INDIFFERENCE CLAIM
AGAINST THE INDIVIDUAL MEDICAL DEFENDANTS**

In an attempt to cure SAC deficiencies as to Dr. Khouri or NP Zaccagnino acting with deliberate indifference, Plaintiff's opposition cites facts that are not in the SAC and thus cannot be considered as to whether the SAC states a claim. *See GMAC Mortg. Corp. v. Weisman*, 1997 U.S. Dist. LEXIS 2042, *10 (S.D.N.Y. 1997) ( "papers in response to a motion to dismiss cannot cure a defect in the pleadings"). The actual facts alleged in the SAC fall well short of a cognizable claim.

For example, in her opposition, Plaintiff asserts that the SAC "alleges that Mr. Freudenberg repeatedly reported concerning signs of a life-threatening condition, including coughing and spitting up blood, and that these reports were largely ignored by medical staff at Orange County Correctional." Plaintiff's MOL, p. 6. Other than conclusory assertions, however, the SAC does *not* allege that Decedent's symptoms were ignored, but rather that Decedent was repeatedly seen by medical providers in response to his complaints, but his condition was "misdiagnosed," leading to the treatment decisions ultimately made. *See* SAC, ¶¶ 102, 130.

Likewise, Plaintiff's arguments regarding a recommended biopsy are not supported by facts in the SAC. Plaintiff contends in her opposition, misleadingly, that "Dr. Khouri and NP Zaccagnino recklessly failed to schedule the biopsy [suggested by the outside endocrinologist] – or otherwise act to assess or treat Mr. Freudenberg's worsening symptoms of lung cancer – for approximately 10 months after he saw the endocrinologist" and that the SAC "alleges that Dr. Khouri and NP Zaccagnino were aware of an endocrinologist's finding that Mr. Freudenberg's

2

symptoms were consistent with cancer and of the biopsy recommendation." Plaintiff's MOL, pp. 6-7. Not true. The SAC merely alleges, in a vague/conclusory manner, that the endocrinologist "recommended a fine needle biopsy to which MR. FREUDENBERG agreed" and that it was recommended "to the **staff at [OCCF]**, including but not limited to Defendants DOE 1, KHOURI, ZACCAGNIO and DOE 2, that a biopsy be scheduled" (SAC, ¶ 5, 135, emphasis added).

Plaintiff impermissibly lumps the Individual Defendants in with the *entire OCCF staff* in this vague allegation. It is not plausible that this recommendation was somehow broadcast to all OCCF staff. Fatal to the claim, the SAC does not allege specific facts establishing that the recommendation was *specifically directed* to Dr. Khouri or NP Zaccagnino, that either of them were made aware of it and/or agreed with it, or that despite such knowledge, they failed to act. Merely "including" the Individual Defendants in the definition of "the staff at [OCCF]" does not and cannot serve to "nudge[] [her] claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Plaintiff's opposition also states that "Dr. Khouri and NP Zaccagnino 'delayed, denied, or refused to provide MR. FREUDENBERG with the necessary treatment' despite approximately 100 written requests for medical attention, and complaints about the lack of care provided, over a two-year period." Plaintiff's MOL, p. 7. Again, this is not accurate. The SAC does not allege such specific facts concerning Dr. Khouri and NP Zaccagnino; instead, it merely includes them in the definition of the entire "staff at [OCCF]" (i.e., "the staff at OCCF, *including but not limited to* Defendants DOE 1, KHOURI, ZACCAGNINO and DOE 2." SAC, ¶ 6 [emphasis added]).

The only factual allegations in the SAC specifically referencing Dr. Khouri or NP Zaccagnino are that they "had access to and reviewed the records"; that on August 8, 2020, Dr. Khouri "misdiagnosed the symptoms of his cancer and over prescription of pain pills (including

2

his being tired and weight gain) to hypothyroidism" with NP Zaccagnino having reviewed the records; and the purported "failure" to schedule the biopsy as referenced above. *Id.* at ¶¶ 130, 133, and 135.  In contradiction to the premise that Dr. Khouri and NP Zaccagnino "delayed, denied, or refused" medical care to Decedent, Plaintiff admits to the "approximately dozens of visits to KHOURI, and ZACCAGNINO. . ." *Id.* at ¶ 131.

Despite these attempts in Plaintiff's opposition to rebrand the SAC allegations from mere misdiagnosis to deliberate indifference, the factual allegations (assuming them to be true) establish nothing more than "the inadvertent failure to provide adequate medical care" and "negligence in diagnosing or treating a medical condition," which does "not rise to the level of deliberate indifference." *Hathaway v. Coughlin,* 99 F.3d 550, 554 (2d Cir. 1996) (internal citations omitted).

This court made clear in *Grubbs v. Ngbodi*, 2022 U.S. Dist. LEXIS 159155, 21 (S.D.N.Y. September 2, 2022) that the misdiagnosis of symptoms and failure to provide a diagnostic test which would have caught the decedent's cancer sooner does not amount to deliberate indifference. Plaintiff's attempt to establish that the SAC "allegations readily satisfy *Darnell's* 'should have known' standard" fail as the "facts" relied upon are not found in the SAC. *See Arnold v. Westchester County Corr. Facility*, 2011 U.S. Dist. LEXIS 88149, 13 (S.D.N.Y. July 11, 2018) (finding plaintiff must establish that the defendants "knew of, and disregarded an excessive risk to, [Plaintiff's] health and safety").

Even if the Court were to accept that Plaintiff sufficiently alleged Dr. Khouri and NP Zaccagnino were aware of the endocrinologist's recommendation to schedule a biopsy and were responsible for scheduling it, but failed to do so (Plaintiff did not), there are no factual allegations establishing the Dr. Khouri and NP Zaccagnino acted with the requisite mental state, as opposed to their own independent professional judgment.  *See Gonzalez v. McGue*, 2001 U.S. Dist. LEXIS

3

<pre>
</pre>

37, *7 (S.D.N.Y. Jan. 4, 2001) (holding that the "Doctor's ultimate failure to perform a biopsy, based upon his conclusion that basal cell carcinoma was not the cause of plaintiff's skin condition, does not constitute deliberate indifference to any serious medical condition"); *see also, Rodriguez v. Bipin,* 2023 U.S. Dist. LEXIS 55300, *12 (N.D.N.Y. March 30, 2023) (noting that "Disagreements over medications, diagnostic techniques, forms of treatment, the need for specialists, and the timing of their intervention implicate medical judgments and not the Eighth Amendment.").

Simply put, contrary to the motion opposition, the SAC does not contain allegations establishing the specific personal deliberate indifference required to state a 1983 claim. Plaintiff's opposition cannot add to or embellish the SAC allegations in order to state a claim. The deliberate indifference claim must be dismissed.

## POINT II

### PLAINTIFF FAILS TO STATE A 42 U.S.C. § 1983 *MONELL* CLAIM AGAINST THE INSTITUTIONAL DEFENDANTS

As explained above, Plaintiff does not allege an underlying depravation of Decedent's constitutional rights that could support a *Monell* claim in the first instance. *See Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) (finding that absent an underlying constitutional violation, the Court need not address municipal liability).

Regardless, as explained in Defendants' moving papers, the SAC fails to allege the requisite "official policy" element. In opposition, without indicating which basis Plaintiff relies upon to establish an "official policy or custom," Plaintiff simply refers to Wellpath's alleged "practice of providing dangerously deficient health care at the Jail and other facilities, as a cost-savings measure and to maximize profits." Plaintiff's MOL, p. 13. In this regard, the SAC relies

4

exclusively on a letter by Catholic Charities Community Services and other entities referencing allegations made by ten anonymous immigration OCCF detainees.[1] Wellpath is not identified anywhere in that letter, and the letter in no way supports Plaintiff's *Monell* claim against Orange County or Wellpath.

This Court has held that prior lawsuits, particularly without findings or admissions of liability, "are insufficient to plausibly support an inference of a widespread custom." *Tieman v. City of Newburgh,* 2015 U.S. Dist. LEXIS 38703, *48 (S.D.N.Y. 2015). Similarly, news reports referring to allegations of widespread substandard medical care on the part of a corrections medical provider are also insufficient. *See Iacovangelo v. Corr. Med. Care, Inc.* 2014 U.S. Dist. LEXIS 140679, 50 (W.D.N.Y. October 2, 2014), *aff'd* in part, vacated in part, remanded, 624 F. Appx. 10 (2d Cir. 2015). The allegations here, based upon anonymous hearsay in the Catholic Charities letter are far weaker than those offered in support of a lawsuit or a news report – at least those sources involve sworn statements and/or are subject to editorial standards. Accordingly, the Catholic Charites letter is irrelevant and inadmissible.

Plaintiff confuses the instant matter with cases where "courts have pointed to similar investigative reports and audits in denying dispositive motions on *Monell* claims." Plaintiff's MOL, p. 14. The cases cited by Plaintiff involve investigative reports of governmental agencies following comprehensive investigations and audits of the correctional care provider. *See e.g. Carter v. Broome Cnty.,* 394 F. Supp.3d 228, 236 and 241 (N.D.N.Y. Aug. 21, 2019) (finding *Monell* claim supported by findings made by the New York State Commission of Correction, which the court noted to be the "state oversight agency responsible for evaluating all state

---

[1] Available at: https://www.law.nyu.edu/sites/default/files/OCCF%20Multi-Organization%20DHS%20CRCL%20Complaint%20and%20Index_2%2017%202022.pdf

5

27670217.1

correctional facilities, county jails," etc.); *Kucharczyk v. Westchester Cnty.,* 95 F. Supp.3d 529, 544 (S.D.N.Y. March 26, 2015) (holding that findings contained in a Department of Justice investigative report were sufficient for *Monell* claim to proceed).

For the reasons described above, the Catholic Charites letters cannot even be given the weight of an unsubstantiated lawsuit, let alone be viewed as "similar" to investigative reports from agencies tasked with oversight. Unlike such reports, the letter's "claims of alleged [constitutional violations]" are not probative of the existence of an underlying policy by a municipality" as required under *Monell*. *Id*. at 543.

Regardless, this Court has also repeatedly rejected attempts rely upon actual governmental reports, far more credible than the Catholic Charities letter, to state a *Monell* claim arising out of medical care. *See e.g. Eisenberg v. County of Westchester*, No. 21-CV-4507 (VB), 2022 U.S. Dist. LEXIS 45021, at *11–12 (S.D.N.Y. Mar. 14, 2022); *Meisel v. Westchester County*, No. 18-cv-7202 (CS), 2020 U.S. Dist. LEXIS 111581, at *19 (S.D.N.Y. June 25, 2020); *Melvin v. County of Westchester*, No. 14-cv-2995 (KMK), 2016 U.S. Dist. LEXIS 41120, at *51–52 (S.D.N.Y. Mar. 29, 2016).

To the extent Plaintiff predicates her *Monell* claim on the purported motivation to reduce costs, this fails as a matter of law due to the absence of "any factual nexus" between the care provided to Decedent and any purported cost-saving policy. *See McNulty v. Yaneka, et al*., 2013 U.S. Dist. LEXIS 25525 (S.D.N.Y. Feb. 25, 2013) (finding that allegations of a "policy of making medical decisions based on cost is based on mere conjecture" in the absence of allegations of factual nexus between the treatment and policy). *See also Helijas v. Corr. Med. Care, Inc*., 2016 U.S. Dist. LEXIS 130958, 59-60 (N.D.N.Y. Sept. 26, 2016) ("The Court would add only that Plaintiff has not alleged facts plausibly suggesting that CMC has a policy of making decisions

regarding medical intervention based on cost and profitability concerns, much less that [Plaintiff's] harm was causally connected to such a policy; Plaintiff's factual allegations in this respect are conclusory and/or conjectural.").

Here, the SAC contains no allegations linking Decedent's medical treatment to the motivation to reduce costs. Plaintiff alleges in vague terms that the general "policies, practices and customs of Defendants as evidenced in paragraphs '97' through '113'" – i.e. those extracted from the Catholic Charities letter -- "were in furtherance of the improper motive of reducing costs and/or increasing profits while denying adequate and necessary care to inmates and detainees." SAC, ¶¶170-174. Plaintiff does not allege facts establishing that any purported constitutional deprivation was caused, specifically, by any alleged "policies, practices, and customs" or in an effort to reduce costs.

Plaintiff's *Monell* claim is based solely on conclusory and unsubstantiated hearsay allegations of unrelated wrongdoing with no factual nexus to this case, not specific policies, practices, or customs alleged to have been in effect at OCCF. As such, Plaintiff's *Monell* claims against the Institutional Defendants must be dismissed.

## POINT III

## PLAINTIFF FAILS TO STATE AN AMERICANS WITH DISABILITY ACT CLAIM OR REHABILITATION ACT CLAIMS

As set forth in detail in Defendants' moving papers, Plaintiff's causes of action under the Americans with Disability Act ("ADA") and Rehabilitation Act ("RA") fail because neither the Individual Defendants, Sheriff DuBois, nor Wellpath are "public entities" covered by those statutes, and Plaintiff fails to allege disparate treatment by any of the Defendants.

### A. Neither Wellpath, Sheriff DuBois, nor the Individual Medical Defendants are Proper ADA/RA Defendants

7

As explained in Defendants' original motion papers, neither Wellpath nor the Individual Defendants are a "public entity" subject to the ADA or RA. *Shore v. Mirabilio*, 2018 U.S. Dist. LEXIS 53451, *23-24 (D. Conn Mar. 29, 2018). With regards to the Individual Defendants specifically, the statutes do not impose liability. *See Garcia v. State Univ. of N.Y. Health Scis. Ctr.*, 280 F.3d 98, 107 (2d Cir. 2001) (Title II of the Americans with Disabilities Act does not provide "for individual capacity suits against state officials.") Without arguing that the Individual Defendants are subject to either statute, thereby conceding that the such claims against them should be dismissed, Plaintiff's opposition refers exclusively to Wellpath's purported receipt of "federal funding," asking the Court to take judicial notice of a contract awarded by the Department of Justice to Wellpath for "managed healthcare services."[2] Plaintiff appears to be referring to the element of the Rehabilitation Act which requires Plaintiff to demonstrate that Defendants receive "financial federal assistance," not whether they are "public entities" under the ADA and RA. *See Hallett v. New York State Dep't of Corr. Servs.*, 109 F. Supp. 2d 190, 198 (S.D.N.Y. August 14, 2000). Regardless, the Plaintiff does not address whether Wellpath or the Individual Defendants are "public entities" covered under either statute.

Even if the referenced contract for Wellpath to provide healthcare services was considered, it does not support a finding that Wellpath received "Federal financial assistance" as that term is construed for purposes of the Rehabilitation Act. *See Nolley v. County of Erie*, 776 F. Supp. 715, 742-743 (W.D.N.Y. Oct. 31, 1991) (finding that although the "phrase 'Federal financial assistance' is not defined in the Rehabilitation Act . . . several courts have held that 'an entity receives financial

---

[2]Available here:
https://www.usaspending.gov/award/CONT_AWD_15B50224F00000023_1540_15B50219D00000001_1540

assistance when it receives a subsidy" whereas "[p]ayment of fair market value for services rendered does not constitute a subsidy.")

Simply put, whether Wellpath was awarded a contract by the Federal government to perform services is irrelevant as to whether Wellpath (or the Individual Defendants) is a "public entity" subject to the ADA and RA. Plaintiff offers nothing beyond the contract award as support the claim. Accordingly, Plaintiff's fourth and fifth causes of must be dismissed as against Wellpath, Sheriff Dubois, Dr. Khouri, and NP Zaccagnino.

### B. Plaintiff Fails to Sufficiently Allege Disparate Treatment

Orange County is a "public entity," but Plaintiff's ADA and RA claims still fail on the basis that the SAC alleges no facts establishing he was treated differently *because of* his disability. *See Sims v. City of New York*, 2018 U.S. Dist. LEXIS 212966, *7-8 (S.D.N.Y. Dec. 7, 2018). The SAC and opposition both state in conclusory terms that Decedent "did not receive medical treatment due to discrimination he faced for being mentally ill." Plaintiff's MOL, p. 18; SAC, ¶¶184-185. The fact that Decedent was disabled and received what Plaintiff alleges was inadequate medical treatment does not amount to an ADA or RA claim. Simply adding "because of his disability" to each allegation of inadequate treatment is not enough. *See id.; see also, Jones v. Ng*, 2015 U.S. Dist. LEXIS 27105 (S.D.N.Y. March 5, 2015) (finding that failure to allege facts to support ADA and RA claims beyond those alleged in support of deliberate indifference claim warrants dismissal); *Hardy v. Diaz*, U.S. Dist. LEXIS 39295 (N.D.N.Y. March 30, 2010) (finding where the factual allegations are merely "challenging the medical treatment of [the inmate's] medical condition . . . he cannot proceed under either the ADA or the RA."). Accordingly, Plaintiff's fourth and fifth claims under the ADA and RA must be dismissed as against all Defendants.

## POINT IV

## PLAINTIFF FAILS TO STATE A CLAIM FOR WRONGFUL DEATH

Plaintiff does not dispute that she fails to state a claim for wrongful death. Instead, Plaintiff requests that the Court ignore the argument altogether because it was "not previously raised by Defendants in their August 17, 2023 Pre-Motion Letter." Plaintiff's MOL, p. 22.

Plaintiff overlooks that defenses to Plaintiff's wrongful death claim were indeed raised in Defendants' pre-motion letter. *See* Dkt. No. 36, n. 3 (statute of limitations). Regardless, the failure to raise an argument in a pre-motion letter does not constitute a waiver of that argument on a motion to dismiss. *See Schweitzer v. Crofton,* 2010 U.S. Dist. LEXIS 90656, *18 (E.D.N.Y. Sept. 1, 2010) (noting that "Plaintiffs proffer no authority, and the Court has been unable to find any, for the proposition that a pre-motion conference letter, a mechanism provided for in a judge's Individual Practice Rules, constitutes a 'motion' under Rule 12 such that a failure to raise a defense in such a letter results in a waiver of that defense"). On the other hand, Plaintiff's failure to respond to such argument on a motion to dismiss constitutes an abandonment of the claim. *See Lipton v. Cty. of Orange*, 315 F. Supp. 2d 434, 446 (S.D.N.Y. April 14, 2004) (holding, "This Court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed"). Accordingly, Plaintiff's wrongful death claim must be dismissed.

## CONCLUSION

Based upon Defendants' original motion papers and the foregoing, Defendants' respectfully request that the Court grant their motion to dismiss Plaintiff's SAC in its entirety, with prejudice, and for such other and further relief the shall deem just and proper.

**DATED:**  February 2, 2024  **BARCLAY DAMON LLP**

By:  /s/ *Paul A. Sanders*
 Paul A. Sanders, Esq.

*Attorneys for County of Orange, Wellpath, LLC (f//k/a Correct Care Solutions Medical Services PC), Wellpath NY, LLC, Orange County Sheriff Carl E. Dubois, Salwa Khouri, M.D. and Mandi Zaccagnino, N.P..*
2000 Five Star Bank Plaza
100 Chestnut Street
Rochester, New York 14604
Telephone:  (585) 295-4426
Email:  psanders@barclaydamon.com

11

27670217.1